# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 9:21-cv-81391

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| MARK S. INCH, in his individual capacity and in his official capacity as Secretary of the Florida Department of Corrections; JOSE COLON, in his individual capacity and in his official capacity as Warden of Everglades Correctional Institution, | |
| Defendants. | |

## COMPLAINT

Plaintiff Human Rights Defense Center ("HRDC") brings this action against Mark S. Inch, in his individual capacity and in his official capacity as Secretary of the Florida Department of Corrections ("FDOC"), and Jose Colon, in his individual capacity and in his official capacity as Warden of Everglades Correctional Institution, to enjoin the FDOC's repeated and continuing violations of Plaintiff's First and Fourteenth Amendment rights. FDOC has arbitrarily censored three publications produced by Plaintiff, all of which provide inmates with information regarding their legal rights, wellbeing, and safety. FDOC has done so largely with little explanation. When it has explained its censorship, it has relied solely on an unconstitutionally vague regulation, which allows Florida prison officials to impound a publication if, among other things it "is dangerously inflammatory" or it contains certain advertising that is "prominent or prevalent throughout the publication." F.A.C. § 33-501.401(15). Vested with extraordinary discretion to implement this

1

provision's undefined, vague, and overbroad terms, FDOC has failed to show that HRDC's publications have affected prison security in any way.  Despite previous judicial holdings that FDOC has violated HRDC's due process rights by failing to provide HRDC notice and opportunity to protest the censorship of its publications, FDOC has failed to provide any meaningful explanation of what content offends F.A.C. § 33-501.401(15), and it has censored several of Plaintiff's publications without providing any notice or opportunity to be heard.  Those actions are unconstitutional.  They have harmed HRDC's business interests and, more importantly, its important mission to apprise inmates of their legal rights.  And this conduct violates HRDC's clearly established First Amendment rights, such that HRDC is entitled not only to an injunction but also to money damages.

## PARTIES

1.      Plaintiff Human Rights Defense Center ("HRDC") is a not-for-profit, Washington charitable corporation under IRS Code § 501(c)(3).  HRDC is headquartered in Lake Worth, Florida.  HRDC publishes *Prison Legal News*, a monthly journal of prison news and analysis, and *Criminal Legal News*, a monthly magazine about criminal justice and criminal legal developments.  HRDC also publishes the *Disciplinary Self-Help Litigation Manual*, a book that helps prisoners exercise their legal rights when confronted with a disciplinary hearing.  HRDC has subscribers of *Prison Legal News* and *Criminal Legal News* in all 50 states and internationally.  Subscribers include attorneys, scholars, and prisoners.

2.      Defendant Mark S. Inch is the Secretary of the FDOC.  The FDOC is responsible for the management of all correctional facilities within the state of Florida.  Inch is the highest ranking official of the FDOC and is responsible for managing the Florida prison system.  He has ultimate responsibility for the promulgation and enforcement of all FDOC rules and policies.  Inch

is sued in his individual capacity and in his official capacity for injunctive and declaratory relief, damages, and costs, including attorneys' fees.  All FDOC actions material to this lawsuit were taken under color of state law.

3.      Defendant Jose Colon is the Warden of Everglades Correctional Institution.  Colon is responsible for adhering to all FDOC rules and policies in Everglades Correctional Institution. Colon is sued in his individual capacity and in his official capacity for injunctive and declaratory relief, damages, and costs, including attorneys' fees.  All of Colon's actions material to this lawsuit were taken under color of state law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under the U.S. Constitution and under 42 U.S.C. § 1983.

5.      Venue is proper because "a substantial part of the events or omissions giving rise to the claim" occurred in the Southern District of Florida.  28 U.S.C. § 1391.  HRDC's principal place of business is in Palm Beach County, Florida, and prisons located in Miami, Fort Lauderdale, Dade City, Homestead, and South Bay have censored Plaintiff's publications.

## FACTS

6.      Since its founding over 30 years ago, HRDC has endeavored to educate and assist prisoners, especially those whose constitutional and human rights have been violated.  To that end, HRDC publishes *Prison Legal News* and *Criminal Legal News*, which contain articles by legal scholars, attorneys, inmates, and news services, aimed at the prison population. *Prison Legal News* has over 6,000 subscribers, and *Criminal Legal News* has over 1,500 subscribers.  True and correct copies of the July 2021 issues of *Prison Legal News* and *Criminal Legal News* are attached as Exhibit 1 and Exhibit 2, respectively.  HRDC also publishes several soft-cover books, including

the *Disciplinary Self-Help Litigation Manual*, which is in its second edition and has sold over 1,400 copies.  A true and correct copy of the cover and table of contents of the *Disciplinary Self-Help Litigation Manual* is attached as Exhibit 3.   The three publications are widely read by attorneys, judges, journalists, academics, and prisoners.

7.    All three publications exist primarily to apprise prisoners of their rights.  All three publications comprise political speech and social commentary, which are entitled to the highest protection afforded by the First Amendment.

8.    All three publications are popular in FDOC facilities.  Nevertheless, with a scant few exceptions, the FDOC has consistently impounded the three publications in many of its facilities.  In doing so, the FDOC has relied on three regulatory provisions.

9.    First, F.A.C. § 33-501.401(15)(i) prohibits any publication that

is dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules.

10.    Second, F.A.C. § 33-501.401(15)(o) prohibits any publication that

contains an advertisement promoting any of the following where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication:

1. Three-way calling services;
2. Pen pal services;
3. The purchase of products or services with postage stamps; or
4. Conducting a business or profession while incarcerated.

11.    Third, F.A.C. § 33-501.401(15)(e) prohibits any publication that "encourages, provides instructions on, or facilitates gambling."

12.    Notwithstanding these and other prohibitions, F.A.C. § 33-501.401(15) provides that "[a]n inmate can possess a publication that is not detrimental to the security, order, or disciplinary or rehabilitative interests of" a prison.

4

13.    The FDOC has applied these provisions against Plaintiff arbitrarily and unnecessarily.  As detailed below, it has impounded several copies of the *Disciplinary Self-Help Litigation Manual*, mostly without notice, and only twice justifying its decision by claiming the book is "dangerously inflammatory."  Since May 2017, it has also impounded virtually every issue of *Prison Legal News* and *Criminal Legal News* because they contained sporadic advertisements for pen-pal and stamps-for-cash services.  Most of these advertisements were no more than two inches by two inches in a full-sized magazine.  In no plausible sense are any such advertisements "prominent or prevalent throughout the publication."  The following are representative examples of recent FDOC impoundments.

A.    **Censorship of the *Disciplinary Self-Help Litigation Manual***

14.    On March 24, 2020, staff at Everglades Correctional Institution impounded a copy of the *Disciplinary Self-Help Litigation Manual*, citing F.A.C. § 33-501.401(3)(g), which authorizes impoundment of "dangerously inflammatory" materials.  The notice of impoundment, which is attached as Exhibit 4, also cites F.A.C. § 33-501.401(3)(m), a catch-all provision which allows the rejection of material that is a threat to the "security, good order, or discipline" of a facility.

15.    On March 27, 2018, staff at Santa Rosa Correctional Institution impounded a copy of *Disciplinary Self-Help Litigation Manual*, citing F.A.C. § 33-501.401(3)(g), which authorizes impoundment of "dangerously inflammatory" materials.  The notice of impoundment, which is attached as Exhibit 5, cited pages 1 through 15 of the publication, stating that content on those pages "[e]ncourages disruption of the institution" and "otherwise presents a threat to the security, good order, or discipline of the correctional system or the safety of any person."  Copies of those very pages—which introduce the book and apprise prisoners of their rights in and leading up to a disciplinary hearing—are attached as Exhibit 6.

16.     In addition to these known impoundments, at least ten prisoners in seven facilities, including Lake Correctional Institution and Century Correctional Institution, have reported not having received ordered copies of *Disciplinary Self-Help Litigation Manual*.  FDOC staff at these facilities have provided Plaintiff no notice regarding these ostensible impoundments.

**B.     Censorship of Prison Legal News**

17.     On July 21, 2021, FDOC staff impounded Volume 32, Number 7, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o), which authorizes impoundment of publications that contain certain advertising that is "the focus of" or "prominent or prevalent throughout the publication," and F.A.C. § 33-501.401(15)(e), which authorizes impoundment of publications that "encourage[], provide[] instructions on, or facilitate[] gambling."  The notice of impoundment received by HRDC, which is attached as Exhibit 7, cited just four pen pal advertisements, one stamps for cash ad, and two ads for fantasy sports—in a 72-page publication.  The advertisements for fantasy sports make no mention of gambling, wagering, or any game of chance.

18.     On June 23, 2021, FDOC staff impounded Volume 32, Number 6, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 8, cited just two pen pal advertisements—in a 72-page publication.

19.     On May 21, 2021, FDOC staff impounded Volume 32, Number 5, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment cited all of four pen pal advertisements and two stamps-for-cash ads—in a 72-page publication.  The notice of impoundment received by HRDC is attached as Exhibit 9.

20.     On October 2, 2020, staff at Everglades Correctional Institution impounded a copy of Volume 31, Number 9, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment cited all of four pen pal advertisements and two stamps-for-cash ads—in a 72-page publication.  Although Everglades CI staff did not send notice to HRDC of this rejection, a

prisoner/subscriber did.  Attached as Exhibit 10 are the notice of impoundment, the request for administrative appeal submitted by the intended inmate recipient, and the ultimate denial of appeal at the warden level.

21.     In addition to these and other known impoundments, several other inmates at various FDOC facilities have reported not having received copies of *Prison Legal News*.  Indeed, HRDC has received reports of impoundment of every single issue of *Prison Legal News* since 2010.   FDOC staff at these facilities have provided Plaintiff no notice regarding these impoundments.  Most recently, for example, an inmate at Dade Correctional Institution reported missing eight issues of *Prison Legal News*.  HRDC has received similar reports from inmates in Avon Park Correctional Institution, Okaloosa Correctional Institution, Santa Rosa Correctional Institution, Wakulla Correctional Institution, Putnam Correctional Institution, and Union Correctional Institution, among others.

### C.     Censorship of Criminal Legal News

22.     On July 8, 2021, FDOC impounded Volume 4, Number 7, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 11, cited just a single pen pal advertisement—in a 56-page publication.

23.     On April 22, 2021, FDOC staff impounded Volume 4, Number 4, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 12, cited just a single pen pal advertisement—in a 56-page publication.

24.     On March 12, 2021, FDOC impounded Volume 4, Number 3, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 13, cited just a single pen pal advertisement—in a 56-page publication.

25.     On February 1, 2021, FDOC impounded Volume 4, Number 2, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 14, cited just a single pen pal advertisement—in a 56-page publication.

26.     In addition to these and other known impoundments, several other inmates have reported not having received copies of *Criminal Legal News*.  Indeed, since its creation in December 2017, HRDC has received reports of impoundment of every single issue of *Criminal Legal News*.  FDOC staff at these facilities have provided Plaintiff no notice regarding these impoundments.  Most recently, for example, an inmate at Hamilton Correctional Institution reported missing twelve consecutive issues of *Criminal Legal News*.  Marion Correctional Institution, too, appears to have categorically banned *Criminal Legal News*.  HRDC has received similar reports from inmates in Dade Correctional Institution, Lowell Correctional Institution, Okaloosa Correctional Institution, and Sumter Correctional Institution, among others.

27.     Unsurprisingly, FDOC's arbitrary impoundments have cost HRDC hundreds of subscribers.  In December 2008, *Prison Legal News* had 239 subscribers within Florida prisons.  Following the resumption of the FDOC's censorship of Plaintiff's publications, *Prison Legal News* has only 39 subscribers today.

28.     In total, since May 2017, Plaintiff distributed to subscribers in Florida prisons thousands of copies of *Prison Legal News* and hundreds of copies of *Criminal Legal News*.  The vast majority of these publications were censored by Defendants.

29.     Additionally, since May 2017, Plaintiff distributed twelve copies of the *Disciplinary Self-Help Litigation Manual* to prisoners in FDOC.  At least eight of the books were rejected by FDOC, while, to Plaintiff's knowledge, only two of the books were delivered.

30.     Even if Plaintiff were given an opportunity to protest the FDOC's decisions, F.A.C. § 33-501.401(15)(o) is so vague as to prevent any reasonable reader from determining its meaning and application.  The provision prohibits "advertisement promoting [prohibited activities] where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication."  But the Florida Administrative Code offers no further guidance as to when an advertisement is "the focus of" a publication or when, on the other hand, it is merely "incidental to" it.  Nor does it define the phrase "prominent or prevalent" or provide any guidance to FDOC officials as to how to determine its fulfillment.

31.     Notwithstanding Plaintiff's requests for an explanation of what qualifies as "prominent or prevalent throughout the publication," the FDOC has declined to explain the standards of its impoundment policy while continuing to censor Plaintiff's publications.

32.     Even if Plaintiff were given an opportunity to protest the FDOC's decisions, F.A.C. § 33-501.401(15)(i) is so vague as to prevent any reasonable reader from determining its meaning and application.  The provision prohibits any publication that is "dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules."  But the Florida Administrative Code does not define the terms "inflammatory" or "dangerously" or what sort of speech "disrupt[s] . . . the institution."  Nor does it provide any guidance to FDOC officials as to how to determine its fulfillment.

33.     On February 14, 2020, HRDC began communicating with Defendant Inch, through counsel, in an attempt to set up a meeting with Defendant Inch regarding the censorship issues described in this complaint.  While initially receptive, FDOC counsel stopped communicating before a meeting could be set up.

34.     On April 15, 2020, HRDC sent a letter to Defendant Inch, through counsel, outlining the unconstitutional censorship of *Prison Legal News*, *Criminal Legal News*, and the *Disciplinary Self-Help Litigation Manual*, and requesting that he review and reverse the censorship of these publications by FDOC.  HRDC received no response to this letter.

35.     On March 3, 2021, HRDC sent a letter directly to Defendant Inch, via certified mail, again detailing the unconstitutional censorship of *Prison Legal News*, *Criminal Legal News*, and the *Disciplinary Self-Help Litigation Manual*, and requesting that he review and reverse the censorship of these publications by FDOC.  HRDC received no response to this letter.

36.     The FDOC's impoundments have caused substantial harm to Plaintiff, inhibiting its First Amendment rights and reducing subscribership.  As a result of the FDOC's censorship, Plaintiff has suffered the loss of numerous subscribers to its magazines.  Further, the FDOC's arbitrary application of F.A.C. § 33-501.401(15)(o) has chilled Plaintiff's ability to communicate with its subscribers and effectively prohibited it from advancing a legitimate political viewpoint. This application also impedes Plaintiff's organizational purpose and wastes its limited resources.

37.     These impoundments have come with no notice to Plaintiff or opportunity for it to be heard.  They have been inconsistent, arbitrary, and, in the case of the *Disciplinary Self-Help Litigation Manual*, without any explanation at all.

38.     None of the publications violate the law or FDOC policies because their content is not "dangerously inflammatory," and any relevant advertisements are either non-existent or so few that they could not possibly qualify as "prominent or prevalent throughout the publication."

39.     Their censorship furthers no legitimate penological interest.  Plaintiff's publications do not pose any legitimate threat to prison safety or order.

40.     There is no valid, rational connection between the FDOC's censorship and any legitimate governmental interest.  On the contrary, FDOC's censorship has the pernicious result of denying inmates critical information about their legal rights.

41.     The FDOC has twice before been sued for banning *Prison Legal News*.   Its responses to the two lawsuits demonstrate it has no interest in complying with the law or honoring its commitments to the courts.

42.     The FDOC began impounding *Prison Legal News* in February 2003, even though the FDOC had previously approved of and delivered the publication.  Plaintiff filed suit.  But the FDOC artificially mooted the lawsuit by amending F.A.C. § 33-501.401 no fewer than three times during litigation, ostensibly allowing Plaintiff's publications into Florida prisons.  The FDOC represented to the District Court and later to the Eleventh Circuit that it would not resume censoring *Prison Legal News*.  The case was therefore dismissed as moot.  *See Prison Legal News v. McDonough*, 200 Fed. App'x 873, 875–76 (11th Cir. 2006).

43.     In 2009, the FDOC defied its commitment to the courts, revising F.A.C. § 33-501.401 and resuming its impoundment and censorship of Plaintiff's publications.  Plaintiff filed suit in 2011.  The Eleventh Circuit affirmed the district court's injunction against the FDOC, forcing it to provide notice for each impounded publication.  *See Prison Legal News v. Secretary, Fla. Dep't of Corrections*, 890 F.3d 954 (11th Cir. 2018).

44.     The FDOC has often ignored that injunction, rejecting some issues of *Prison Legal News* and *Criminal Legal News* and copies of the *Disciplinary Self-Help Litigation Manual* with no explanation or notice.

45.     Plaintiff has appealed the rejection of its publications with the FDOC's Literature Review Committee.  All of Plaintiff's appeals have been denied without explanation.

11

46.     At least once, the FDOC failed to timely review HRDC's appeal of a rejection.  On April 19, 2021, FDOC informed HRDC that it had failed to conduct a "Publishers Review" of the censorship of the April 2020 issue of *Prison Legal News* and was unable to do so because it was "far outside the time frame for" such a review.  In other words, the FDOC failed to review HRDC's appeal for a year and then used its delay as an excuse not to review the appeal.

## COUNT ONE

### Violation of First and Fourteenth Amendments—Censorship

47.     Paragraphs 1 through 46 are incorporated as if reproduced fully.

48.     Plaintiff's publications include political speech and enjoy the highest level of First Amendment speech protection.

49.     The FDOC's refusal to deliver the publications to Florida's inmates bears no connection with any legitimate state interest.  Although prisoners enjoy fewer First Amendment rights than the general public, HRDC's First Amendment rights are not diminished merely because its publications are sent to prison inmates.

50.     The FDOC's censorship of all three publications constitutes a de facto blanket ban of HRDC's speech and of speech directed toward prisoners to advise them of their rights.

51.     On information and belief, the FDOC's continued, unjustified censorship of Plaintiff's publications is due to FDOC officials' disagreement with the content of those publications.

52.     The FDOC's refusal to deliver the publications violates Plaintiff's First Amendment free speech rights.

## COUNT TWO

### Violation of Fourteenth Amendment—Void for Vagueness

53.     Paragraphs 1 through 52 are incorporated as if reproduced fully.

12

54.     F.A.C. § 33-501.401(15) allows the impoundment of materials in terms so vague that persons of common intelligence must necessarily guess at their meanings and will necessarily differ in their application.

55.     The provision gives FDOC officials extremely broad leeway in determining which materials to accept and which to censor or impound.  FDOC officials have used that leeway here to censor speech they disfavor politically.

56.     The provision is susceptible of no narrowing construction that would give Plaintiff or any other reasonably informed reader guidance as to what speech it prohibits.

57.     The provision therefore violates the Fourteenth Amendment.

## COUNT THREE

### Violation of First and Fourteenth Amendments—Overbreadth

58.     Paragraphs 1 through 57 are incorporated as if reproduced fully.

59.     F.A.C.  § 33-501.401(15) is unconstitutionally overbroad because most of its applications are unconstitutional, judged in relation to the regulation's legitimate sweep.

60.     Applied here, F.A.C. § 33-501.401(15) has no legitimate application because the only speech it censors threatens no legitimate state interest.

## COUNT FOUR

### Violation of the Fourteenth Amendment's Due Process Clause—Procedural Due Process

61.     Paragraphs 1 through 60 are incorporated as if reproduced fully.

62.     The FDOC's censorship of Plaintiff's publications has deprived Plaintiff of constitutionally protected liberty and property interests without due process of law.

63.     The FDOC's failure to provide Plaintiff with constitutionally required notice and an opportunity to be heard and to protest the FDOC's censorship violates the Due Process Clause of the Fourteenth Amendment.

## COUNT FIVE

**Violation of the Fourteenth Amendment's Due Process Clause—Substantive Due Process**

64.     Paragraphs 1 through 63 are incorporated as if reproduced fully.

65.     The FDOC's censorship of Plaintiff's publications has been arbitrary and capricious and bears no rational relationship with any state interest.

66.     The FDOC's conduct violates the Due Process Clauses' substantive component, which protects against arbitrary and irrational government behavior.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that this Court grant the following relief:

(a)     Declare that Defendants' conduct violates Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

(b)     Declare that F.A.C. § 33-501.401(15), as applied to Plaintiff's publications, violates Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

(c)     Enter preliminary and permanent injunctive relief prohibiting the FDOC from refusing to deliver Plaintiff's publications to Florida inmate subscribers, ordering the FDOC to deliver all censored issues of Plaintiff's publications which have been withheld from inmate subscribers to their intended recipients, and requiring the FDOC to provide Plaintiff with individualized notice and an opportunity to be heard and to protest the decision each time Plaintiff's publications are censored by the FDOC;

(d)     Award Plaintiff nominal and compensatory damages against Defendants, in their individual capacities, of a sufficient amount to compensate Plaintiff for, among other things, refusal to deliver past issues of Plaintiff's publications to inmate subscribers and refusal to provide Plaintiff with notice and an opportunity to be heard and to protest the FDOC's

14

censorship, as well as the impediment of Plaintiff's ability to disseminate its political message; frustration of Plaintiff's organizational mission; diversion of resources; loss of actual and potential subscribers; damage to Plaintiff's reputation; costs of printing, handling and mailing; costs of staff time; and other damages to be proven at trial;

      (e)      Award Plaintiff punitive damages for violating Plaintiff's due process rights in violation of the injunction;

      (f)      Award Plaintiff its reasonable costs and attorneys' fees arising out of this litigation, pursuant to 42 U.S.C. § 1988; and

      (g)      Grant Plaintiff such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

Dated: August 10, 2021

/s/  *Daniel Marshall*_____

Daniel Marshall, Fla. Bar No. 617210
Jesse W. Isom, Fla. Bar No. 98588
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Tel.: (561) 360-2523
Fax: (561) 828-8166
dmarshall@hrdc-law.org
jwisom@humanrightsdefensecenter.org

Michael H. McGinley*
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-2000
Fax: (215) 994-2222
Michael.McGinley@dechert.com

Eric D. Hageman*
Dechert LLP
1900 K Street, NW
Washington, DC 20006

Casey Norman*
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

*(\* motions to appear* pro hac vice
*forthcoming)*

*Attorneys for Plaintiff*