## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE No.: 9:21-cv-81391-DMM**

**HUMAN RIGHTS DEFENSE CENTER, a**
**Washington charitable corporation,**

      **Plaintiff,**

  **v.**

**MARK INCH, in his individual capacity and in**
**His official capacity as Secretary of the Florida**
**Department of Corrections; JOSE COLON, in his**
**Individual capacity and in his official capacity as**
**Warden of Everglades Correctional Institution**

      **Defendants.**
_____/

## **DEFENDANT'S MOTION TO DISMISS**

COMES NOW Defendant Mark Inch, Secretary of the Florida Department of Corrections ("Defendant"), through undersigned counsel, moves to dismiss Plaintiff's Complaint.

Plaintiff is an organization that routinely publishes material to prisoners containing advertisements that Plaintiff knows violate prison rules such as the Florida Administrative Code. Plaintiff promotes its prohibited publications nationwide then repeatedly sues state correctional agencies when the publications are inevitably impounded.  Plaintiff traditionally engages in lengthy, costly litigation with multiple attorneys to generate astronomical attorney fees at taxpayer expense.

### I.     **Plaintiff's complaint is an impermissible shotgun pleading.**

Federal Rules of Civil Procedure 8(a)(d) and 10(b) set the minimum requirements for pleadings by requiring  "a short and plain statement of the claim showing that the pleader is entitled to relief" and requiring a party to "state its claims ... in numbered paragraphs, each

limited as far as practicable to a single set of circumstances." "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules' because they are 'calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.'" *Vujin v. Galbut*, 836 Fed. App'x 809, 814 (11th Cir. 2020) (unpublished)[1](citations omitted). The Eleventh Circuit has identified four categories of impermissible shotgun pleadings. *Weiland,* 792 F.3d at 1321. First, the most common type "is a complaint containing multiple counts where each count adopts the allegations of all proceeding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* Second, complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third, complaints that do not separate "each cause of action or claim for relief" into separate counts *Id.* at 1323. Fourth, complaints that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*  When a district court receives a shotgun pleading, it is required to "strike [the complaint] and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Vibe Micro*, 878 F.3d at 1295.

Plaintiff's complaint is a quintessential shotgun pleading and the Court is required to strike the complaint. The complaint is poorly organized, replete with conclusory allegations which are vague or fail to contain a reference date to be relevant to Plaintiff's purported claims.

---

[1] *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) (*per curiam*) (An unpublished opinion is not binding, but it is persuasive authority); *see generally*, Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Plaintiff's complaint contains multiple counts where each count adopts the allegations of all proceeding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  Plaintiff fails to specify what acts defendant allegedly committed to constitute a violation of Plaintiff's constitutional rights.  For instance, Plaintiff just alleges that unspecified employees and unspecified dates or locations impounded Plaintiff's publication without alleging any facts to attribute liability to the defendant.  Plaintiff also alleges that it has heard tale from inmates that publications were impounded since 2010 but provides no specific information such as dates, location, inmate information, which publication was impounded, who impounded the publications, *etc*. (Doc. 1 at 7).

Defendant is forced to guess as to the factual basis for many of Plaintiff's claims. Plaintiff sues Defendant in his individual and official capacity without alleging factual support to sustain such claims. Plaintiff's pleading is so scarce that Defendant does not even know if the tales from inmates fall within the statute of limitations, would be barred by res judicata or any other defense.  Plaintiff's complaint contains, at the most, five paragraphs for count one and only two vague paragraphs for counts three through five (Doc. 1 at 12-14).  Every introductory paragraph for counts one through five merely incorporate the entirety of the complaint preceding each count.  As such, Defendant is forced to guess as to which facts follow which count and do not have enough information as to Plaintiff's vague conclusory allegations of the inmate tales of impoundment or the alleged involvement of Defendant. Accordingly, Plaintiff's complaint is a shotgun pleading and is required to be struck.

### II.     Plaintiff fails to state a constitutional claim regarding the impoundment of Plaintiff's publications.

A prison regulation is valid if it passes the four-factor test set out in *Turner v. Safley*, 482 U.S. 78 (1987). The *Turner* factors are: "(1) whether there is a 'valid, rational connection'

between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns." *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996) (quoting *Turner*, 482 U.S. at 89-91).

The Eleventh Circuit previously held that impoundment of Plaintiff's publications based upon the same or similar advertisements in this case does not violate Plaintiff's constitutional rights. *Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018). Recognizing that the FDC could constitutionally impound a publication with even one suspect ad, the Eleventh Circuit found that Plaintiff's publications containing advertisements such as pen pal services[2], people locator services, means to provide unverifiable telephone access, and/or cash-for stamps services were constitutionally impounded and that the FDC administrative rules permitting the impoundment of Plaintiff's publications met the *Turner* test. *Prison Legal News,* at 972.

Binding caselaw provides that the FDC may constitutionally impound a publication based upon a single ad. *Id. See also Thornburgh v. Abbott*, 490 U.S. 401, 404-05 & n.5, 418-19, 109 S.Ct. at 1877 & n.5, 1884-85 (1989) (upholding the facial validity of a prison regulation that allowed a warden to reject a publication based on a single prohibited feature). *Jones v. McNeil*, 07-80918-CIV, 2008 WL 2222273, at *12 (S.D. Fla. Apr. 30, 2008) (In a custodial setting,

---

[2] In a separate Eleventh Circuit case, the court upheld a ban on pen pal advertisements. <u>*Perry v. Sec'y, Fla. Dep't of Corr.*</u>, 664 F.3d 1359, 1366 (11th Cir. 2011) ("Therefore, the FDC has shown a rational relationship between the legitimate penological interests of protecting the public and ensuring internal prison security and the Rule prohibiting inmates from soliciting for pen pals."). Every issue of *Prison Legal News* and *Criminal Legal News* has an advertisement for pen pals.

"a prisoner's exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses 'the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment.'") (quoting *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132 (1977)).

Further, FDC administrative rules that prohibit publications containing prohibited advertisement, which have already found by the Eleventh Circuit to meet the *Turner* test, provide for Defendant to impound Plaintiff's publications, even when containing only one prohibited advertisement. For instance, F.A.C. § 33-501.401(15) prohibits publications that:

> (e) The publication encourages, provides instructions on, or facilitates gambling;
> (g) The publication encourages, provides instruction on, or facilitates the commission of a crime;
> (h) The publication depicts, describes, or encourages activities that may lead to the use of physical violence on another person;
> (i) The publication is dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules;
> (o) The publication contains an advertisement promoting any of the following where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication:
> > 1. Three-way calling services;
> > 2. Pen pal services;
> > 3. The purchase of products or services with postage stamps; or
> > 4. Conducting a business or profession while incarcerated.
> (p) The publication otherwise presents a threat to the security, order, or rehabilitative objectives of the correctional system or the safety of any person.

Plaintiff does not allege that the impounded publications did not contain advertisements such as pen pal services, stamps-for-cash/goods schemes, website/social media setup services, research assistance/people finder services, *etc*. Rather, Plaintiff alleges that the advertisements were not prominent or prevalent throughout the publication, addressing only one administrative rule and disregarding other qualifying rules such as the disruption of the institution, safety of an

individual or the facilitation of commission of a crime (Doc. 1 at 5-6).

However, even if Plaintiff were to establish that the relevant advertisements were not prominent or prevalent throughout the publication, Plaintiff still fails to state a cause of action for a constitutional violation, to the extent Plaintiff seems to imply that the mere alleged violation of its own rules is a constitutional violation. It is well established that violation of a prison rule or regulation does not rise to the level of a constitutional violation. Prison regulations do not acquire federal constitutional dimension, do not confer rights or benefits and are merely designed to guide prison officials in the administration of prisons. *Sandin v. Conner*, 515 U.S. 472, 481-482 (1995).[3]  As such, any claim relating to Defendant failing to follow prison regulations in the screening of publications is not, by itself, a constitutional violation. Controlling caselaw provides that Plaintiff's publications may be impounded on a single advertisement without implicating a violation of Plaintiff's First Amendment rights.  *Prison Legal News*, 890 F.3d at 972 (noting that the FDC could reject a publication with one suspect advertisement) (citing *Thornburgh*, 490 U.S. at 404-05 & n.5, 418-19).  Accordingly, Plaintiff's first amendment claims should be dismissed.

### III.    Plaintiff fails to state a claim that F.A.C. § 33-501.401(15) is void for vagueness or overbroad.

---

[3] *See also United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (explaining that mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation  are  not  constitutional  mandates."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow  prison regulations...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest and failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding that "failure to  follow  prison  rules  or  regulations  do not,  without  more,  give  rise  to a constitutional violation"); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527-28 (11th Cir. 1987) (finding that violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

6

In count two, Plaintiff alleges in ironically vague terms that F.A.C. § 33-501.401(15) is "so vague that persons of common intelligence must necessarily guess at their meanings" (Doc. 1 at 13). Plaintiff presents its void for vagueness claims even though Plaintiff previously brought forth a lawsuit under the same regulation which Plaintiff fully litigated on the merits, pursued appellate relief and where Plaintiff had no difficulty interpreting or asserting its belief that F.A.C. § 33-501.401(15) violated its constitutional rights as written. *See Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018); *Prison Legal News v. Jones*, 4:12CV239-MW/CAS, 2015 WL 12911752 (N.D. Fla. Oct. 5, 2015), *aff'd sub nom. Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018).

The standard proffered by Plaintiff for determining whether the regulation is unconstitutionally vague is the standard used for determining vagueness for criminal laws, not prison regulations. Defendant submits that persuasive caselaw in our circuit supports that Plaintiff's facial vagueness challenge should be assessed under a less restrictive standard than that used for criminal statutes. Although Plaintiff is not an incarcerated prisoner, Plaintiff sends its publications for economic gain to incarcerated prisoners that are subject to the rules and regulations of the correctional institution.

In *Sweet v. McNeil*, 4:08CV17-RH/WCS, 2009 WL 903291, at *4 (N.D. Fla. Mar. 31, 2009), the Northern District provided a detailed analysis regarding the split in caselaw on whether a vagueness challenge to a prison regulation is analyzed under a more relaxed standard than a criminal law standard and ultimately sided with the more relaxed standard. Similar analysis has been made in other cases that evaluated prison regulations under a deferential standard and reasonableness test. *See, e.g.*, *Baer v. McNeil*, 5:09CV222/SPM/EMT, 2010 WL 1816847, at *2 (N.D. Fla. May 6, 2010) (prison regulation constitutional as written and applied

analyzed under a deferential standard and reasonableness under Turner); *Robles v. English*, 5:13CV6/MCR/EMT, 2013 WL 3797594, at *10 (N.D. Fla. July 19, 2013) (court found that a constitutional facial challenge to prison regulations only requires the rule to have a "plainly legitimate sweep" and that "the better-reasoned position is that some deference is due prison administrators in determining whether a prison disciplinary rule is void for vagueness. That is, after all, the standard required when a prison regulation impinges upon a First Amendment interest."); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (stating law affecting only economic interest is subject to less rigorous scrutiny by courts and is only void for vagueness if it is vague in all applications); *Jones v. McNeil*, 07-80918-CIV, 2008 WL 2222273, at *10 (S.D. Fla. Apr. 30, 2008) (analyzing constitutional challenge to prison regulations and stating that "due process requires less exactitude in statutes that lack criminal sanctions). To find a civil statute void for vagueness, the statute must be "so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS,* 387 U.S. 118, 123 (1967). "[A] non-criminal statute is not unconstitutionally vague 'if persons of reasonable intelligence can derive a core meaning from the statute." *Cotton States Mutual Ins. Co. v. Anderson,* 749 F .2d 663, 669 n. 9 (11th Cir. 1984).

Prison regulations are only actionable when the regulation is unreasonable. *Hakim v. Hicks,* 223 F.3d 1244, 1247 (11th Cir. 2000). The standard for determining the reasonableness of a regulation is the *Turner* standard. *Smith v. Fla. Dep't of Corr.*, 318 Fed. App'x 726, 729 (11th Cir. 2008) (unpublished but persuasive authority). In the context of prison regulations, "The *Turner* analysis applies equally to facial and "as applied" [constitutional] challenges." *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (citing *Morrison v. Hall,* 261 F.3d at 905, 907). *See also Wood v. Vartiainen*, 2:02CV626FTM-29DNF, 2005 WL 2291723, at *5

(M.D. Fla. Sept. 20, 2005) (applying *Turner* reasonableness test for evaluating prison regulation under First Amendment); *In re Soliman*, 134 F. Supp. 2d 1238, 1252 (N.D. Ala. 2001) (stating prison regulations are scrutinized under a deferential standard pursuant to the *Turner* test).  As stated in more detail above, F.A.C. § 33-501.401(15) was found to be reasonable and met the *Turner* standard in *Prison Legal News,* 890 F.3d 954.  Therefore, the regulation meets constitutional standards and is not vague or overbroad.[4]

In this case, the plain meaning of the terms at issue are ordinary words subject to common meaning and the Plaintiff had fair notice that its advertisements at issue were prohibited under the prison regulations because the Eleventh Circuit told Plaintiff so in *Prison Legal News,* 890 F.3d 954. Plaintiff is precluded by its own prior lawsuit from coming forward now to claim that it was unaware based upon the wording of the regulation that advertisements for pen-pal services, stamps for cash, phone call services, people locater services and the like were prohibited by prison rules that met the *Turner* test. *See also Jones v. Caruso*, 569 F.3d 258, 276 (6th Cir. 2009) (citing *United States v. Hill*, 167 F.3d 1055, 1064 (6th Cir. 1999) for the proposition that a "defendant had no standing to argue that gambling statutes were void for

---

[4]     Further, even if F.A.C. § 33-501.401(15) were to be evaluated under a stricter standard, the regulation is not unconstitutionally vague.  Plaintiff does not specifically cite in count two which section of F.A.C. § 33-501.401(15) that Plaintiff considers vague, does not provide specific facts to support its assertions, and relies on an incorporation of all asserted facts that requires Defendant to guess as to the buried facts that are relevant to count two.  Although Defendant is forced to guess, it appears that Plaintiff is taking issue with only two subsections, F.A.C. § 33-501.401(15)(i) with the terms "inflammatory" or "dangerously" and "disrupt[s] . . . the institution" and F.A.C. § 33-501.401(15)(o) with the terms "focus of" or "incidental to" and "prominent or prevalent."  (Doc. 1 at 9).

The purpose of the vagueness doctrine is to ensure fair notice to a person "to enable the ordinary citizen to conform his or her conduct to the law." *See City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). However, the doctrine for penal statutes only requires reasonably clear guidelines and does not require that "every law be so crystal clear as to preclude every single vagary or difference of opinion regarding enforcement under any scenario." *Jones v. McNeil*, 07-80918-CIV, 2008 WL 2222273, at *10 (S.D. Fla. Apr. 30, 2008).

vagueness where he had fair notice that his conduct was prohibited by those statutes"); *Cole Vision Corp. v. Dep't of Business and Prof. Reg.*, 688 So. 2d 404, 410 (Fla. 1st DCA 1997) (finding that "it is not possible . . . to adopt rules in such excruciating detail that every potential circumstances arising . . . will be expressly addressed.").

In count three, Plaintiff alleges in conclusory terms that application of F.A.C. § 33-501.401(15) is unconstitutionally overbroad and does not protect a legitimate state interest. As stated above, binding caselaw from the Eleventh Circuit has already found that F.A.C. § 33-501.401(15) is constitutional, meets the *Turner* test, and promotes a legitimate state interest. *Prison Legal News,* 890 F.3d 954. Plaintiff also made similar constitutional challenges to another prison rule regarding inmate mail in *Prison Legal News v. Jones*, 126 F. Supp. 3d 1233, 1257 (N.D. Fla. 2015), *opinion amended and superseded,* 4:12CV239-MW/CAS, 2015 WL 12911752 (N.D. Fla. Oct. 5, 2015), *aff'd sub nom. Prison Leg. News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018).  In that case the Northern District Court noted that "[p]rison regulations are not often challenged on vagueness grounds" and that "some courts have held that this [vagueness] doctrine and its frequent companion, the First Amendment overbreadth doctrine, do not apply with independent force in the prison-litigation context."  *Jones*, 126 F.Supp. 3d at 1257 (citing *Miller v. Wilkinson,* No. 2:98–CV–275, 2010 WL 3909119, at *5 (S.D. Ohio Sept. 30, 2010) (internal citations omitted)).

Plaintiff again does not provide specific facts in count three to support its assertions but rather relies on an incorporation of all asserted facts that requires Defendant to guess as to the buried facts that are relevant to count three.  Defendant and the Court are not required to sift through Plaintiff's allegations to attempt to see what buried facts are relevant to this claim. *Ferrell v. Durbin*, 311 Fed. App'x 253, 259 (11th Cir. 2009); *Magluta v. Samples*, 256 F.3d

1282, 1284 (11th Cir. 2001). However, Defendant can only guess that Plaintiff's claims are based upon F.A.C. § 33-501.401(15)(i) with the terms "inflammatory" or "dangerously" and "disrupt[s] . . . the institution".

The Eleventh Circuit has already determined that the FDC can ban publications that violate F.A.C. § 33-501.401(15), which meets the *Turner* test. *Prison Legal News,* 890 F.3d 954. The wording in F.A.C. § 33-501.401(15)(i) are words of a common nature, are not ambiguous and do not give unbridled discretion to prison officials. In a similar case, the Fifth Circuit in *Vodicka v. Phelps*, 624 F.2d 569, 570 (5th Cir. 1980), a binding opinion[5], found that a prison regulation banning a publication based upon the prison's determination that the publication was "an immediate threat to the security of the institution" was not vague or overbroad and was constitutional as applied.

In this case, Plaintiff provides no factual assertions in its shotgun pleading to indicate what sections of F.A.C. § 33-501.401(15) that Plaintiff believes are overbroad and provides no facts as to how the regulation is unconstitutional as applied to Plaintiff. The regulation meets the *Turner* test and Plaintiff does not allege that any of its impounded publications were devoid of the improper advertisement that Plaintiff was expressly told by the Eleventh Circuit could be prohibited.  Thus, Plaintiff does not state a constitutional claim against F.A.C. § 33-501.401(15).

Notwithstanding that F.A.C. § 33-501.401(15) is not unconstitutionally vague or overbroad, Plaintiff is also precluded from making such claims now as Plaintiff should have properly raised these issues in its prior case.  Plaintiff attempted to raise its vagueness argument in its prior case, but the trial court denied Plaintiff's motion to amend its complaint and Plaintiff

---

[5] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*) (Fifth Circuit decisions dated on or before Sept. 30, 1981, are binding precedent in the Eleventh Circuit).

did not preserve the issue on appeal. *Prison Legal News,* 890 F.3d at 963 (Plaintiff's "assertion

that the "prominent or prevalent" language is too vague is not properly before us because the

district court denied Plaintiff's motion to amend its complaint to include a void-for-vagueness

claim, and Plaintiff did not appeal that ruling.").

Additionally, Plaintiff did not raise its overbreadth argument in its prior case although

Plaintiff could have done so. Even though Plaintiff did not properly raise its constitutional issues

in its original case, Plaintiff is precluded from doing so now as this case involves the same

nucleus of operative facts as the original case.  The United States Supreme Court explained claim

preclusion in that:

> [C]laim preclusion prevents parties from raising issues that could have been
> raised and decided in a prior action—even if they were not actually litigated. If a
> later suit advances the same claim as an earlier suit between the same parties, the
> earlier suit's judgment "prevents litigation of all grounds for, or defenses to,
> recovery that were previously available to the parties, regardless of whether they
> were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S.
> 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); see also Wright & Miller § 4407.
> Suits involve the same claim (or "cause of action") when they "'aris[e] from the
> same transaction,'" *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316,
> 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011) (quoting *Kremer v. Chemical Constr.
> Corp.*, 456 U.S. 461, 482, n. 22, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)), or
> involve a "common nucleus of operative facts," Restatement (Second) of
> Judgments § 24, Comment *b*, p. 199 (1982) (Restatement (Second)).

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp, Inc.*, 140 S. Ct. 1589, 1594-95 (2020).

Here, Plaintiff brings the same lawsuit against the FDC involving the impoundment of

Plaintiff's publications for improper advertisement that is prohibited under F.A.C. § 33-

501.401(15). The causes of action between both cases are the same and share a common nucleus

of fact. Therefore, Plaintiff should be precluded from raising its vagueness and overbreadth

challenges to F.A.C. § 33-501.401(15) since Plaintiff should have properly raised those

arguments in its initial action. As to Plaintiff's possible allegation that additional publications

besides *Prison Legal News* were impounded, Plaintiff's claims are precluded by the binding caselaw rendered in *Prison Legal News,* 890 F.3d 954, which held that the F.A.C. § 33-501.401(15) met the *Turner* test.

    **IV.**    <u>**Plaintiff fails to state a claim for violations of due process.**</u>

    **A.**  <u>**Failure to State a Claim as to Specific Instances.**</u>

    As to the issue of whether Plaintiff has received impoundment notices, Plaintiff's own Complaint often contradicts these assertions, and often times is devoid of the detail necessary (*i.e.* dates) to even determine whether Plaintiff's claims are timely. As an initial matter, Defendant notes that any claims prior to August 10, 2017 are time-barred under the four-year statute of limitations pursuant to 95.11, Florida Statutes. Further, any claims occurring prior to the previous action by Prison Legal News referenced above are *res judicata*.

    Plaintiff alleges that the *Disciplinary Self-Help Litigation Manual* has been impounded in March 2020, March 2017, acknowledging notice was provided in both situations and providing copies of the notices. (Doc. 1 at 5, Doc 1-6 at 2-3, Doc 1-7 at 2-3) Plaintiff then alleges that "at least ten prisoners in seven facilities, including Lake Correctional institution and Century Correctional Institution, have reported not having received ordered copies of *Disciplinary Self-Help Litigation Manual* without Plaintiff receiving notice (*Id.* at 6). Plaintiff provides no further detail as to when these alleged violations happened such that Defendant or this Court can determine whether those claims are time-barred or subject to any other defense.

    Plaintiff further alleges that "since May 2017, Plaintiff distributed twelve copies of the *Disciplinary Self-Help Litigation Manual* to prisoners in FDC. At least eight of the books were rejected by FDC, while, to Plaintiff's knowledge, only two of the books were delivered." (Doc. 1 at 8) Plaintiff clearly has knowledge of the impoundment of these copies, but fails to clearly note

whether that notice was obtained via impoundment notice by FDC officials, and fails to provide dates of those alleged impoundments such that Defendant can adequately respond to whether those instances state a claim or, again, are even timely.

Plaintiff alleges that "[s]ince May 2017, [Defendant] has also impounded virtually every issue of *Prison Legal News* and *Criminal Legal News* (Doc 1 at 5).  As to *Prison Legal News*, Plaintiff's Complaint contradicts that assertion, where Plaintiff admits that notices were received in at least July 2021, June 2021, May 2021 (Doc. 1 at 6). Plaintiff then, again, makes a vague allegation without detail as to dates, that "several other inmates at various FDC facilities have reported not having received copies of *Prison Legal News*. . . FDC staff at these facilities have provided Plaintiff no notice regarding these impoundments." (*Id*. at 7).

As to *Criminal Legal News*, Plaintiff acknowledge receipt of notices in July 2021, April 2021, March 2021, and February 2021, but again makes a vague allegation that other issues have been impounded without notice, again failing to provide dates such that these alleged violations can be sufficiently investigated and responded to (Doc. 1 at 7-8).

**B.   Failure to State a Claim against Defendant Inch.**

As an initial matter, Defendant Inch became Secretary of the Florida Department of Corrections on January 8, 2019[6], accordingly, all claims against Secretary Inch in an individual capacity for alleged violations prior to that date fail to state a claim as Secretary Inch could not possibly have been responsible for such alleged actions or inactions.

Plaintiff fails to identify a single action or inaction taken by Secretary Inch in the Complaint, instead focusing on actions and inactions by Department staff members in allegedly improperly failing to provide individual notices. Nowhere does Plaintiff allege that Secretary

---

[6] See Office of the Secretary Webpage at http://www.dc.state.fl.us/secretary.html.

14

Inch personally was involved in those actions, nor could Plaintiff so allege. Plaintiff is possibly attempting to state a claim against Secretary Inch based on the doctrines of *respondeat superior* or vicarious liability; however, such claims are unavailable. *See Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992) (citing *Monell v. Dep't of Soc. Srvcs.*, 436 U.S. 658 (1978)). *See also Collins v. City of Harker Heights*, 503 U.S. 115 (1992); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). An individual cannot be held liable for the omissions or actions of others, and a supervisor can only "be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." *Am. Fed'n of Labor v. City of Miami*, 637 F. 3d 1178, 1190 (11th Cir. 2011). Nowhere in the complaint does Plaintiff allege "any facts to support such allegation[s]" and, instead, "simply parrots the language of the cases which hold that supervisory liability may arise if the supervisor 'instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights.'" *Milledge v. Jones*, No. 4:15CV577-WS/CAS, 2016 WL 11680219, at *2 (N.D. Fla. Nov. 18, 2016) (quoting *Gross v. White*, 430 Fed. App'x 527, 531 (11th Cir. 2009)).

The sole allegation against Secretary Inch is that he is "responsible for managing the Florida prison system" and has "ultimate responsibility for the promulgation and enforcement of all FDOC rules and policies."[7] (Doc. 1 at 1-2). Such threadbare allegations do not meet the "extremely rigorous" standard for supervisory liability. *See Hall v. Smith*, 170 Fed. App'x 105, 108 (11th Cir. 2006) (stating that "[b]ecause Hall alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of

---

[7] Plaintiff's only additional allegations state that Plaintiff attempted to correspond and meet with Secretary Inch "regarding the censorship issues described in this complaint" and do not allege that Plaintiff put Secretary Inch on notice of a custom or practice regarding the notices of impoundment. (Doc. 1 at 9-10)

its employees, the district court did not err in dismissing Hall's claims against the City"). Accordingly, such is insufficient to state a claim against Defendant Inch for failure to provide notices of each impoundment. Secretary Inch cannot be held responsible for the alleged failure to follow Department rules by individual officers, where he has no personal involvement and Plaintiff has not alleged facts regarding a custom or practice regarding the impoundment notices of which Secretary Inch had knowledge.

C.  **The Northern District is the proper forum for the violation of injunction claims.**

As addressed by Plaintiff in the Complaint, a previous case by Plaintiff resulted in an injunction against Defendant that required "to provide notice for each impounded publication." (Doc. 1 at 11). *See Prison Legal News*, 890 F.3d 954. Plaintiff alleges as to subsequent notice issues that the claim is actually an allegation that Defendant has "ignored that injunction" by rejecting publications without notice (Doc. 1 at 11). Plaintiff's claims are allegations that the previous injunction has been violated rather than new claims, which is supported by Plaintiff's request for relief: "punitive damages for violation Plaintiff's due process rights in violation of the injunction." (Doc. 1 at 15).

Claims regarding a violation of a previous injunction are more properly raised in the original case wherein the injunction was issued, before the same Court. The Eleventh Circuit has held that "injunctions are enforced through the district court's civil contempt power" and "[i]f a party contends that another party is violating an injunction, the aggrieved party should move the court for an order to show cause why the other party should not be held in civil contempt." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (internal citations omitted). *See also Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). Accordingly, these claims are more appropriately brought before the original Court which has

jurisdiction to enforce its injunction, rather than in a new proceeding before this Court which would require the litigation of a question already previously resolved in the prior action.

**D.  Plaintiff fails to state a substantive due process claim.**

To the extent that Plaintiff presents count five of the Complaint as a substantive due process claim that the Department's "censorship of Plaintiff's publications has been arbitrary and capricious and bears no rational relationship with any state interest," Plaintiff fails to state a claim as this question has already been addressed by the Eleventh Circuit:

> The record shows that the Department's decision to limit inmates' exposure to the ads is not "so remote" from the Department's security and safety interests "as to render the… [impoundments] arbitrary or irrational." Pope [v. Hightower], 101 F.3d at 1385. It's not remote at all. There is a rational connection between its impoundments of Prison Legal News based on the magazine's ad content and prison security and public safety interests.

*Prison Legal News*, 890 F.3d 954, 972 (11th Cir. 2018). Accordingly, Plaintiff fails to state a claim as to the substantive due process issue and the claim is frivolous.

**V.        Eleventh Amendment Immunity**

Defendant is entitled to immunity for the official capacity claims under the Eleventh Amendment. A suit against a state employee in an official capacity is a suit against the State for Eleventh Amendment purposes. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). In the absence of any waiver or express congressional authorization, which is not present in this case, the Eleventh Amendment prohibits a suit against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

It is well settled that 42 U.S.C. §1983 does not create a cause of action for money damages against the States, a State agency, or State officials in their official capacities. *McKinley v. Kaplan,* 177 F.3d 1253, 1256 (11th Cir.  1999).  Dismissal is appropriate if the plaintiff seeks monetary relief from defendant's immune from such relief.  28 U.S.C. §

1915(e)(2)(B)(iii). Accordingly, Defendant is immune from suit in his official capacity as it relates to damages, and all official capacity claims for damages against him must be dismissed.

### VI. Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law." (*Id.*). "District Courts are obliged to analyze carefully whether 'preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances.'" *Wade v. U.S.*, 20-11962, 2021 WL 4234168, at *9 (11th Cir. Sept. 17, 2021) (quoting, *Evans*, 407 F.3d 1272, 1282 (11th Cir. 2005)).

A government employee performs a discretionary function when the task is a (1) legitimate job-related function and (2) through means that were withing the employee's power to utilize. *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Although Plaintiff's shotgun pleading provides no facts of any action by Defendant to impute liability, to the extent that Plaintiff intends to allege some sort of supervisor liability, the objective circumstances of a supervisor enforcing prison regulations would compel the conclusion that supervisory functions in performance of official duties is withing the scope of a discretionary function. *See, e.g.*, *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018); *Barcelona v. Sec., Dept. of Corrections*, 847 Fed. App'x 689, 693 (11th Cir. 2021) (unpublished), *cert. denied sub nom. Barcelona, Joel v. Inch, Sec., FL DOC, et al.* (U.S. Oct. 4,

2021) (Court found supervisory functions or enforcement of regulations is a discretionary duty taken within the scope of employment and in the performance of official duties).  Once a prison official shows that he acted within the scope of his discretionary authority, the burden shifts to the Plaintiff to establish a violation of a constitutional right and whether the right was clearly established at the time of the alleged conduct.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In this case, controlling caselaw in *Prison Legal News,* 890 F.3d 954, shields Defendant against Plaintiff's constitutional claims. Plaintiff has alleged no facts, nor can they, that would pierce the protective covering of qualified immunity.  The Department of Corrections followed controlling law by impounding publications that contain advertisements prohibited in a prison setting. The specific examples of publication impoundments cited by Plaintiff all contained prohibited advertisements with proper notice to Plaintiff of the impoundment (Docs. 1-3 through 1-16). To the extent that Plaintiff alleges they heard tale of other impoundments from prisoners, Plaintiff does not allege any specific facts regarding the reports that Plaintiff claims they received, and Plaintiff does not allege that the impounded publications did not contain prohibited advertisement. In fact, Plaintiff does not allege any wrongdoing by Secretary Inch regarding impoundment of publications containing only proper advertisements. (Doc. 1, *generally*).  "The touchstone of qualified immunity is notice or fair warning . . . [that] "a reasonable official would understand that his conduct violates" a constitutional right.  *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015).  Controlling caselaw dictated the impoundment of Plaintiff's magazines and Secretary Inch is entitled to qualified immunity for those claims.

As to Plaintiff's due process claims, Plaintiff again provides specific examples of impoundments where Plaintiff was provided notice from the FDC and only conclusory claims of

unspecified impoundments without notice. However, Plaintiff does not allege any facts to subject Secretary Inch to personal liability for Plaintiff's conclusory claims.  As stated above, Plaintiff's shotgun pleading appears to, at the most, allege claims of *respondeat superior* against Secretary Inch. Absent allegations of personal involvement in the alleged constitutional violation or allegations of a policy, custom or practice that was the "moving force" behind the alleged misconduct, Secretary Inch is entitled to qualified immunity.  *Board of Cty Comm., v. Brown*, 520 U.S. 397 (1997).

### VII.    Plaintiff is not entitled to punitive damages

Punitive damages are to "punish the defendant for willful or malicious conduct and to deter others from similar behavior," not to compensate a plaintiff for injuries suffered. *Hoever v. Marks*, 993 F.3d 1353, 1358-59 (11th Cir. 2021) (internal citations omitted). Rather, punitive damages are based upon the character or egregious misconduct of the tortfeasor. *Id*. at 1359.

In this case Plaintiff seeks punitive damages against Defendant for violation of the injunction issued by the Northern District (Doc. 1 at 15).  Plaintiff provides no factual allegations as the culpability of Defendant that would support a punitive damage claim (Doc. 1, *generally*).[8] To the extent that Plaintiff seeks enforcement for alleged violation of the injunction, as stated above, Plaintiff is pursuing its claim in the incorrect forum. Accordingly, Plaintiff's claim for punitive damages should be struck.

WHEREFORE, based upon the forgoing facts and arguments, Defendant requests that the Court dismiss Plaintiff's complaint.

---

[8] Plaintiff does not explain what part of the injunction was violated or when.  This is peculiar considering the Plaintiff was provided notice via email for many issues of *Prison Legal News* and has requested a review, per Rule 33-501.401(25)(b), F.A.C., of all issues of *Prison Legal News* and *Criminal Legal News* going back to August of 2017.  FDC is complying with this request.

## CERTIFICATE OF CONFERRAL

**I hereby certify** that, in accordance with Southern District of Florida local rule 7.1(a)(3), Plaintiff's counsel was conferred with and states that Plaintiff opposes Defendant's Motion to Dismiss.

/s/ Lori Huskisson
LORI HUSKISSON

Respectfully submitted,

**ASHLEY MOODY**                                **ASHLEY MOODY**
**ATTORNEY GENERAL**                    **ATTORNEY GENERAL**

/s/ Lori Huskisson                                  /s/ Kristen J. Lonergan
**Lori Huskisson**                                  **Kristen Lonergan**
Senior Assistant Attorney General        Assistant Attorney General
Florida Bar No.:  0845531                     Florida Bar No.: 125556
Office of the Attorney General              Office of the Attorney General
The Capitol, PL-01                                 The Capitol, PL-01
Tallahassee, Florida 32399-1050          Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300                   Telephone: (850) 414-3300
Facsimile: (850) 488-4872                    Facsimile: (850) 488-4872
Lori.Huskisson@myfloridalegal.com     Kristen.Lonergan@myfloridalegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically and furnished electronically on all counsel of record via CM/ECF on October 11, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.