## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 9:21-cv-81391

HUMAN RIGHTS DEFENSE CENTER,

                            Plaintiff,

     v.

RICKY D. DIXON, in his official capacity as
Secretary of the Florida Department of
Corrections; MARK S. INCH, in his individual
capacity; JOSE COLON, in his individual capacity
and in his official capacity as Warden of
Everglades Correctional Institution; MICHA
NEAL, in her individual capacity; and DOES 1–7
in their individual capacities.

                         Defendants.

Jury Trial Demanded

### FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiff Human Rights Defense Center ("HRDC") brings this action against Mark S. Inch, former Secretary of the Florida Department of Corrections ("FDOC"), in his individual capacity, Jose Colon, in his individual capacity and in his official capacity as Warden of Everglades Correctional Institution, and Ricky Dixon, in his official capacity as Secretary of FDOC, to enjoin the FDOC's repeated and continuous violations of Plaintiff's First and Fourteenth Amendments rights.  In addition to existing defendants, HRDC brings this action against Micha Neal, former Assistant Warden of Santa Rosa Correctional Institution, in her individual capacity, and against DOES 1 through 3, who served on the Literature Review Committee ("LRC") on or about April 19, 2018, in their individual capacities, DOES 4 through 6, who served on the LRC on or about October

24, 2019, in their individual capacities, and DOE 7, mailroom staff person at the Central Florida Reception Center, in his individual capacity.

FDOC has arbitrarily censored three publications produced by Plaintiff, all of which provide inmates information regarding their legal rights, wellbeing, and safety.  FDOC has frequently done so with no explanation at all.  When it has explained its censorship, it has relied solely on an unconstitutionally vague regulation, which allows Florida prison officials to impound a publication if, among other things it "is dangerously inflammatory" or it contains certain advertising that is "prominent or prevalent throughout the publication."  F.A.C. § 33-501.401(15).  Vested with extraordinary discretion to implement this provision's undefined, vague, overbroad terms, FDOC has failed to show that HRDC's publications have affected prison security in any way.  Despite previous judicial holdings that FDOC has violated HRDC's due process rights by failing to provide HRDC notice and opportunity to protest the censorship of its publications, FDOC has failed to provide any meaningful explanation of what content offends F.A.C. § 33-501.401(15), and it has censored several of Plaintiff's publications without providing any notice or opportunity to be heard.  Those actions are unconstitutional.  FDOC has announced its intention to amend F.A.C. § 33-501.401 since the original filing of this complaint to further constrain the scope of materials accessible to inmates.  This behavior has harmed HRDC's business interests and, more importantly, its important mission to apprise inmates of their legal rights.  And this conduct violates HRDC's clearly established First Amendment rights, such that HRDC is entitled not only to an injunction but also to money damages.

## PARTIES

1.     Plaintiff Human Rights Defense Center ("HRDC") is a not-for-profit, Washington charitable corporation under IRS Code § 501(c)(3).  HRDC is headquartered in Lake Worth,

2

Florida.  HRDC publishes *Prison Legal News*, a monthly journal of prison news and analysis, and *Criminal Legal News*, a monthly magazine about criminal justice and criminal legal developments. HRDC also publishes the *Disciplinary Self-Help Litigation Manual*, a book that helps prisoners exercise their legal rights when confronted with a disciplinary hearing.  HRDC has subscribers of *Prison Legal News* and *Criminal Legal News* in all 50 states and internationally.  Subscribers include attorneys, scholars, and prisoners.

2.     Defendant Ricky D. Dixon is the Secretary of the FDOC.  The FDOC is responsible for the management of all correctional facilities within the state of Florida.  Dixon is the highest ranking official of the FDOC and is responsible for managing the Florida prison system.  He has ultimate responsibility for the promulgation and enforcement of all FDOC rules and policies. Dixon is sued in his official capacity for injunctive and declaratory relief.  All FDOC actions material to this lawsuit were taken under color of state law.

3.     Defendant Mark S. Inch was the Secretary of the FDOC between January 8, 2019 and November of 2021.  Inch is sued in his individual capacity for damages and costs, including attorneys' fees.  All FDOC actions material to this lawsuit were taken under color of state law.

4.     Defendant Jose Colon is the Warden of Everglades Correctional Institution.  Colon is responsible for adhering to all FDOC rules and policies in Everglades Correctional Institution. Colon is sued in his individual capacity and in his official capacity for injunctive and declaratory relief, damages, and costs, including attorneys' fees.  All of Colon's actions material to this lawsuit were taken under color of state law.

5.     Defendant Micha Neal was an Assistant Warden at Santa Rosa Correctional Institution in March 2018.  Neal's responsibilities included referring impounded publications to the LRC and recommending their rejection by FDOC facilities statewide.  Neal is sued in her

3

individual capacity for damages. All of Neal's actions material to this lawsuit were taken under color of state law.

6.     The true names and identities of Defendants DOES 1 through 3 are presently unknown to HRDC.  Defendants DOES 1 through 3 served on the LRC on or about April 19, 2018. Defendants DOES 1 through 3 exercised final decisionmaking authority to affirm impoundment, and to reject publications statewide.  Each of Defendants DOES 1 through 3 was personally involved in the decision to ban the *Disciplinary Self-Help Litigation Manual*.  Defendants DOES 1 through 3 are sued in their individual capacities.  All of the actions of Defendants DOES 1 through 3 material to this lawsuit were taken under color of state law.  HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 1 through 3 are known.

7.     The true names and identities of Defendants DOES 4 through 6 are presently unknown to HRDC. Defendants DOES 4 through 6 currently serve on the Literature Review Committee.  Defendants DOES 4 through 6 exercised final decisionmaking authority to affirm impoundment, and to reject publication statewide.  Each of Defendant DOES 4 through 6 have been personally involved in decisions to ban the HRDC publications at issue in this case. Defendants DOES 4 through 6 are sued in their individual capacities.  All of the actions of Defendants DOES 4 through 6 material to this lawsuit were taken under color of state law.  HRDC will seek to amend this Complaint as soon as the true names and identities of Defendants DOES 4 through 6 are known.

8.     The true name and identity of Defendant DOE 7 is presently unknown to HRDC. Defendant DOE 7 was employed by FDOC on or about September 23, 2021.  Defendant DOE 7 was personally involved in rejecting HRDC publications.  Defendant DOE 7 is sued in his or her

individual capacity.  All of the actions of Defendant DOE 7 material to this lawsuit were taken under color of state law.  HRDC will seek to amend this Complaint as soon as the true name and identity of Defendant DOE 7 is known.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under the U.S. Constitution and under 42 U.S.C. § 1983.

10.     Venue is proper because "a substantial part of the events or omissions giving rise to the claim" occurred in the Southern District of Florida.  28 U.S.C. § 1391.  HRDC has 15 employees located and its principal place of business in Palm Beach County, Florida, and prisons located in Miami, Fort Lauderdale, Dade City, Homestead, and South Bay have censored Plaintiff's publications.

## FACTS

11.     Since its founding over 30 years ago, HRDC has endeavored to educate and assist prisoners, especially those whose constitutional and human rights have been violated.  To that end, HRDC publishes *Prison Legal News* and *Criminal Legal News*, which contain articles by legal scholars, attorneys, inmates, and news services, aimed at the prison population. *Prison Legal News* has over 6,000 subscribers, and *Criminal Legal News* has over 1,500 subscribers.  True and correct copies of the July 2021 issues of both *Prison Legal News* and *Criminal Legal News* are attached as Exhibit 1 and Exhibit 2, respectively.  HRDC also publishes several books, including the *Disciplinary Self-Help Litigation Manual*, which is in its second edition and has sold over 1,400 copies.  A true and correct copy of the cover and table of contents of the *Disciplinary Self-Help Litigation Manual* is attached as Exhibit 3.  The three publications are widely read by attorneys, judges, journalists, academics, and prisoners.

12.     All three publications exist primarily to apprise prisoners of their rights.  All three publications comprise political speech and social commentary, which are entitled to the highest protection afforded by the First Amendment.

13.     All three publications are popular in FDOC facilities.  Nevertheless, with a scant few exceptions, the FDOC has consistently impounded the three publications in numerous of its facilities.  In doing so, the FDOC has relied on three regulatory provisions.

14.     First, F.A.C. § 33-501.401(15)(i) prohibits any publication that

is dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules.

15.     Second, F.A.C. § 33-501.401(15)(o) prohibits any publication that

contains an advertisement promoting any of the following where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication:

      1. Three-way calling services;
      2. Pen pal services;
      3. The purchase of products or services with postage stamps; or
      4. Conducting a business or profession while incarcerated.

16.     Third, F.A.C. § 33-501.401(15)(e) prohibits any publication that "encourages, provides instructions on, or facilitates gambling."

17.     Notwithstanding these and other prohibitions, F.A.C. § 33-501.401(15) provides that "[a]n inmate can possess a publication that is not detrimental to the security, order, or disciplinary or rehabilitative interests of" a prison.

18.     The FDOC has applied these provisions against Plaintiff arbitrarily and unnecessarily.  As detailed below, it has impounded several copies of the *Disciplinary Self-Help Litigation Manual*, in most cases without sending notice to HRDC, and only twice justifying its

decision by claiming the book is "dangerously inflammatory."  The first facility to censor the *Disciplinary Self-Help Litigation Manual* was Santa Rosa Correctional Institution

19.     Since May 2017, it has also impounded every issue of *Prison Legal News* and of *Criminal Legal News* because they contain sporadic advertisements for pen-pal and stamps-for-cash services.  Although a few copies were delivered to prisoners despite FDOC's censorship, every issue was officially banned by FDOC.  Most of these advertisements are no more than two inches by two inches in a full-sized magazine.  In no plausible sense are any such advertisements "prominent or prevalent throughout the publication."  Representative examples of recent FDOC impoundments are detailed below.

20.     On or about September 23, 2021, staff at the Central Florida Reception Center rejected a book package sent by HRDC. The package contained two books: *The Habeas Citebook: Ineffective Assistance of Counsel* (Second Edition) and *Jailhouse Lawyers: Prisoners Defending Prisoners v. the U.S.A.* HRDC publishes the former and distributes the latter. Neither book appeared on any publicly available list of publications banned by FDOC.  CFRC staff returned the book package to HRDC without a copy of a Form DC5-101 or other explanation for the rejection. After HRDC raised the issue with counsel for FDOC in this matter, FDOC's General Counsel, Lance Neff, responded by letter on November 1, 2021, attached as Exhibit 15, acknowledging the lack of notice as to the rejections, and clarifying that one of books, *Jailhouse Lawyers*, was previously reviewed and rejected by the LRC.  Neff informed HRDC that because HRDC is not the publisher of *Jailhouse Lawyers*, the LRC would not entertain HRDC's appeal.

21.     On or about October 20, 2021, the FDOC issued a notice, attached as Exhibit 16, announcing its intention to amend F.A.C. § 33-501.401.  The proposed amendment eliminates the requirement that advertisements be "prominent or prevalent throughout [a] publication" to be

7

grounds for complete impoundment of the publication. It follows that under FDOC's new policy, a single, two-inch advertisement deemed "inflammatory" would eviscerate access to the entirety of a magazine without any further inquiry.

### A. Censorship of the *Disciplinary Self-Help Litigation Manual*

22.    On March 24, 2020, staff at Everglades Correctional Institution impounded a copy of *Disciplinary Self-Help Litigation Manual*, citing F.A.C. § 33-501.401(3)(g), which authorizes impoundment of "dangerously inflammatory" materials. The notice of impoundment, which is attached as Exhibit 4, also cites F.A.C. § 33-501.401(3)(m), a catch-all provision which allows the rejection of material that is a threat to the "security, good order, or discipline" of a facility.

23.    On March 27, 2018, staff at Santa Rosa Correctional Institution impounded a copy of *Disciplinary Self-Help Litigation Manual*, citing F.A.C. § 33-501.401(3)(g), which authorizes impoundment of "dangerously inflammatory" materials. A notice of impoundment, Form DC5-101, was signed by Assistant Warden Micha Neal. The notice of impoundment, which is attached as Exhibit 5, generally cited pages 1 through 15 of the publication, stating that content on those pages "[e]ncourages disruption of the institution" and "otherwise presents a threat to the security, good order, or discipline of the correctional system or the safety of any person." Copies of those very pages—which introduce the book and apprise prisoners of their rights in and leading up to a disciplinary hearing—are attached as Exhibit 6. That decision was upheld by the Literature Review Committee when it met on or around April 19, 2018, thus applying a statewide ban on the book.

24.    In addition to these known impoundments, HRDC has been informed that ten prisoners in seven facilities, including Lake Correctional Institution and Century Correctional Institution, have ordered and not received copies of *Disciplinary Self-Help Litigation Manual*.

FDOC staff at these facilities have provided Plaintiff no notice regarding these ostensible impoundments.

## B. Censorship of *Prison Legal News*

25.     On July 21, 2021, FDOC staff impounded Volume 32, Number 7, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o), which authorizes impoundment of publications that contain certain advertising that is "the focus of" or "prominent or prevalent throughout the publication," and F.A.C. § 33-501.401(15)(e), which authorizes impoundment of publications that "enrouage[], provides instructions on, or facilitates gambling."   The notice of impoundment received by HRDC, which is attached as Exhibit 7, cited just four pen pal advertisements, one stamps for cash ads, and two ads for fantasy sports—in a 72-page publication.  The advertisement for fantasy sports makes no mention of gambling, wagering, or any game of chance.

26.     On June 23, 2021, FDOC staff impounded Volume 32, Number 6, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 8, cited just two pen pal advertisements—in a 72-page publication.

27.     On May 21, 2021, FDOC staff impounded Volume 32, Number 5, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment cited all of four pen pal advertisements and two stamps-for-cash ads—in a 72-page publication.   The notice of impoundment received by HRDC, which is attached as Exhibit 9.

28.     On April 22, 2021, FDOC staff impounded Volume 32, Number 4, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 10, cited just a single pen pal advertisement—in a 72-page publication.

29.     On October 2, 2020, staff at Everglades Correctional Institution impounded a copy of Volume 31, Number 9, of *Prison Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment cited all of four pen pal advertisements and two stamps-for-cash ads—in a 72-

page publication.  Although Everglades CI staff did not send notice to HRDC of this rejection, a prisoner/subscriber did.  Attached as Exhibit 11 are the notice of impoundment, the request for administrative appeal submitted by the intended inmate recipient, and the ultimate denial of appeal at the warden level.

30.     In addition to these and other known impoundments, several other inmates at various FDOC facilities have reported not having received copies of *Prison Legal News* since 2017.  Indeed, HRDC has received reports of impoundment of every single issue of *Prison Legal News* since 2010.  FDOC staff at these facilities have provided Plaintiff no notice regarding these ostensible impoundments.  Most recently, for example, an inmate at Dade Correctional Institution reported missing eight issues of *Prison Legal News*.  HRDC has received similar reports from inmates in Avon Park Correctional Institution, Okaloosa Correctional Institution, Santa Rosa Correctional Institution, Wakulla Correctional Institution, Putnam Correctional Institution, and Union Correctional Institution.

### C. Censorship of *Criminal Legal News*

31.     On July 8, 2021, FDOC impounded Volume 4, Number 7, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 12, cited just a single pen pal advertisement—in a 56-page publication

32.     On March 12, 2021, FDOC impounded Volume 4, Number 3, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 13, cited just a single pen pal advertisement—in a 56-page publication.

33.     On February 1, 2021, FDOC impounded Volume 4, Number 2, of *Criminal Legal News*, citing F.A.C. § 33-501.401(15)(o).  The notice of impoundment received by HRDC, which is attached as Exhibit 14, cited just a single pen pal advertisement—in a 56-page publication.

34.     In addition to these and other known impoundments, several other inmates have reported not having received copies of *Criminal Legal News* since 2017. Indeed, HRDC has received reports of impoundment of every single issue of *Criminal Legal News* since the magazine began in December 2017.  FDOC staff at these facilities have provided Plaintiff no notice regarding these ostensible impoundments.  Most recently, for example, an inmate at Hamilton Correctional Institution reported missing twelve consecutive issues of *Criminal Legal News*.   Marion Correctional Institution, too, appears to have categorically banned *Criminal Legal News*.  HRDC has received similar reports from inmates in Dade Correctional Institution, Lowell Correctional Institution, Okaloosa Correctional Institution, and Sumter Correctional Institution, among others.

35.     Unsurprisingly, FDOC's arbitrary impoundments have cost HRDC hundreds of subscribers.  In December 2008, Plaintiff had 239 subscribers within Florida prisons.  Following the resumption of the FDOC's censorship of Plaintiff's publications, Plaintiff has only 45 subscribers today.

36.     In total, since May 2017, Plaintiff distributed to subscribers in Florida prisons thousands of copies of *Prison Legal News* and hundreds of copies of *Criminal Legal News*.  The vast majority of these publications were censored by Defendants.

### D. General FDOC Practices

37.     Even if Plaintiff were given an opportunity to protest the FDOC's decisions, F.A.C. § 33-501.401(15)(o) is so vague as to prevent any reasonable reader from determining its meaning and application.  The provision prohibits "advertisement promoting [prohibited activities] where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication."  But the Florida Administrative Code offers no further guidance as to when an advertisement is "the focus of" a publication or when, on the

other hand, it is merely "incidental to" it.  Nor does it define the phrase "prominent or prevalent" or provide any guidance to FDOC officials as to how to determine its fulfillment.

38.     Notwithstanding Plaintiff's requests for an explanation of what qualifies as "prominent or prevalent throughout the publication," the FDOC has declined to explain the standards of its impoundment policy while continuing to censor Plaintiff's publications.

39.     Even if Plaintiff were given an opportunity to protest the FDOC's decisions, F.A.C. § 33-501.401(15)(i) is so vague as to prevent any reasonable reader from determining its meaning and application.  The provision prohibits any publication that is "dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules."  But the Florida Administrative Code does not define the term "inflammatory" or "dangerously" or what sort of speech "disrupt[s] . . . the institution."  Nor does it provide any guidance to FDOC officials as to how to determine its fulfillment.

40.     On February 14, 2020, HRDC began communicating with Defendant Inch, through counsel, in an attempt to set up a meeting with Defendant Inch regarding the censorship issues described in this complaint.  While initially receptive, FDOC counsel stopped communicating before a meeting could be set up.

41.     On April 15, 2020, HRDC sent a letter to Defendant Inch, through counsel, outlining the unconstitutional censorship of *Prison Legal News*, *Criminal Legal News*, and the *Disciplinary Self-Help Litigation Manual*, and requesting that he review and reverse the censorship of these publications by FDOC.  HRDC received no response to this letter.

42.     On March 3, 2021, HRDC sent a letter directly to Defendant Inch, via certified mail, again detailing the unconstitutional censorship of *Prison Legal News*, *Criminal Legal News*,

and the *Disciplinary Self-Help Litigation Manual*, and requesting that he review and reverse the censorship of these publications by FDOC.  HRDC received no response to this letter.

43.     The FDOC's impoundments have caused substantial harm to Plaintiff, inhibiting its First Amendment rights and reducing subscribership.  As a result of the FDOC's censorship, Plaintiff has suffered the loss of numerous subscribers to its magazines.  Further, the FDOC's arbitrary application of F.A.C. § 33-501.401(15)(o) has chilled Plaintiff's ability to communicate with its subscribers and effectively prohibited it from advancing a legitimate political viewpoint. This application also impedes Plaintiff's organizational purpose and wastes its limited resources.

44.     These impoundments have come with no notice to Plaintiff or opportunity for it to be heard.  They have been inconsistent, arbitrary, and, in the case of the *Disciplinary Self-Help Litigation Manual*, without any explanation at all.

45.     None of the publications violate the law or FDOC policies because their content is not "dangerously inflammatory," and any relevant advertisements are either non-existent or so few that they could not possibly qualify as "prominent or prevalent throughout the publication."

46.     Their censorship furthers no legitimate penological interest.  Plaintiff's publications do not pose any legitimate threat to prison safety or order.

47.     There is no valid, rational connection between the FDOC's censorship and any legitimate governmental interest.  On the contrary, FDOC's censorship has the pernicious result of denying inmates of critical information about their legal rights.

48.     The FDOC has twice before been sued for banning *Prison Legal News*.  Its responses to the two lawsuits demonstrate it has no interest in complying with the law or honoring its commitments to the courts.

13

49.     The FDOC began impounding *Prison Legal News* in February of 2003, even though the FDOC had previously approved of and delivered the publication.  Plaintiff filed suit.  But the FDOC artificially mooted the lawsuit by amending F.A.C. § 33-501.401 no fewer than three times during litigation, ostensibly allowing Plaintiff's publications into Florida prisons.  The FDOC represented to the District Court and later to the Eleventh Circuit that it would not resume censoring *Prison Legal News*.  The case was therefore dismissed as moot.  *See Prison Legal News v. McDonough*, 200 Fed. App'x 873, 875–76 (11th Cir. 2006).

50.     In 2009, the FDOC defied its commitment to the courts, revising F.A.C. § 33-501.401 and resuming its impoundment and censorship of Plaintiff's publications.  Plaintiff filed suit in 2011.  The Eleventh Circuit affirmed the district court's injunction against the FDOC, forcing it to provide notice for each impounded publication.  *See Prison Legal News v. Secretary, Fla. Dep't of Corrections*, 890 F.3d 954 (11th Cir. 2018).  However, the courts upheld FDOC's censorship from HRDC's First Amendment claim, and did not address HRDC's claim that FDOC's policy was unconstitutionally vague.

51.     The FDOC has ignored that injunction with utter impunity, rejecting some issues of *Prison Legal News* and *Criminal Legal News* and copies of *Disciplinary Self-Help Litigation Manual* with no explanation or notice.

52.     Plaintiff has appealed the rejection of some of its publications with the FDOC's Literature Review Committee.  All of Plaintiff's appeals have been denied without explanation.

53.     At least once, the FDOC failed to timely review HRDC's appeal of a rejection.  On April 19, 2021, FDOC informed HRDC that it had failed to conduct a "Publishers Review" of the censorship of the April 2020 issue of *Prison Legal News* and was unable to do so because it was

"far outside the time frame for" such a review.  In other words, the FDOC failed to review HRDC's appeal for a year and then used its delay as an excuse not to review the appeal.

## COUNT ONE

### Violation of First and Fourteenth Amendments—Censorship

54.     Paragraphs 1 through 53 are incorporated as if reproduced fully.

55.     Defendants Inch and Defendant DOE 7 oversaw the failure to deliver copies of the *The Habeas Citebook: Ineffective Assistance of Counsel (Second Edition)* and *Jailhouse Lawyers: Prisoners Defending Prisoners v. the U.S.A.* without explanation on September 23, 2021.

56.     Defendants Inch and Colon oversaw the impoundment and failure to deliver the *Disciplinary Self-Help Litigation Manual* at the Everglades Correctional Institution, the Santa Rosa Correctional Institution, the Lake Correctional Institution, and the Century Correctional Institutional as referenced in paragraphs 22, 23, and 24.

57.     Defendant Micha Neal affirmed the impoundment of the *Disciplinary Self-Help Litigation Manual* at the Santa Rosa Correctional Institution as referenced in paragraph 24. DOES 1 through 3, through their positions the Literature Review Committee, upheld the impoundment on appeal, effectuating a statewide ban on the publication.

58.     Defendants Inch and Colon oversaw the FDOC's impoundment of numerous volumes of *Prison Legal News*, as referenced in paragraphs 25 through 29.  In impounding *Prison Legal News*, FDOC staff cited one-off pen pal and stamps for cash advertisements as the prominent or prevalent focus of publications spanning 72 pages.

59.     Defendants Inch and Colon oversaw the FDOC's impoundment of numerous volumes of *Criminal Legal News*, as referenced in paragraphs 31, 32, and 33.  In justifying the

15

impoundment, FDOC staff cited single pen pal advertisements as the prominent or prevalent focus of numerous publications spanning 56 pages.

60.     Defendants Inch and Colon oversaw additional impoundments or failures to deliver numerous volumes of *Prison Legal News*, *Criminal Legal News*, and the *Disciplinary Self-Help Litigation Manual*, as referenced in paragraphs 30, 34, and 36.

61.     Plaintiff's publications include political speech and enjoy the highest level of First Amendment speech protection.

62.     The FDOC's refusal to deliver the publications to Florida's inmates bears no connection with any legitimate state interest.  Although prisoners enjoy fewer First Amendment rights than the general public, HRDC's First Amendment rights are not diminished merely because its publications are sent to prison inmates.

63.     The FDOC's censorship of all three publications constitute a de facto blanket ban of HRDC's speech and of speech directed toward prisoners to advise them of their rights.

64.     On information and belief, the FDOC's continued, unjustified censorship of Plaintiff's publications is due to FDOC officials' disagreement with the content of those publications.

65.     The FDOC's refusal to deliver the publications is a violation of Plaintiff's clearly established First Amendment free speech rights.

66.     Defendants Dixon and Colon have an ongoing duty to ensure their official actions comport with the law.  Their censorship of HRDC's publications violates this duty.  They are sued in their official capacities for declaratory and injunctive relief.

67.     The censorship of HRDC's publications by Defendants Inch, Colon, Neal, and DOES 1 through 7 have violated HRDC's clearly established constitutional rights.   These defendants are sued in their individual capacities.

68.     In all the above acts, Defendants have acted under color of law and in violation of Plaintiff's clearly established rights.

## COUNT TWO

### Violation of Fourteenth Amendment—Void for Vagueness

69.     Paragraphs 1 through 53 are incorporated as if reproduced fully.

70.     As referenced in paragraphs 37, 38, and 39, F.A.C. § 33-501.401(15) allows the impoundment of materials in terms so vague as to necessitate that persons of common intelligence guess at their meanings and subsequently differ in their application.

71.     The provision gives FDOC officials extremely broad leeway in determining which materials to accept and which to censor or impound.  FDOC officials have used that leeway here to censor speech they disfavor politically.

72.     The provision is susceptible of no narrowing construction that would give Plaintiff or any other reasonably informed reader guidance as to what speech it prohibited.

73.     FDOC's proposed amendment fares no better. As written, it maintains the ambiguity inherent in the description of prohibited materials while eliminating "prominence" or "prevalence" as a stopgap to blanket impoundment.

74.     The provision therefore violates the Fourteenth Amendment.

75.     Defendants Dixon and Colon have an ongoing duty to ensure their official actions comport with the law.  Their implementation of F.A.C. § 33-501.401(15) violates this duty.  They are sued in their official capacities for declaratory and injunctive relief.

17

76.     The implementation of F.A.C. § 33-501.401(15) by Defendants Inch, Colon, Neal, and DOES 1 through 7 have violated HRDC's clearly established constitutional rights.  These defendants are sued in their individual capacities.

77.     In all the above acts, Defendants have acted under color of law and in violation of Plaintiff's clearly established rights.

<u>**COUNT THREE**</u>

**Violation of First and Fourteenth Amendments—Overbreadth**

78.     Paragraphs 1 through 53 are incorporated as if reproduced fully.

79.     F.A.C. § 33-501.401(15) is unconstitutionally overbroad because most of its applications are unconstitutional, judged in relation to the regulation's legitimate sweep.

80.     Applied here, F.A.C. § 33-501.401(15) has no legitimate application because the only speech it censors threatens no legitimate state interest.

81.     The proposed amendment to F.A.C. § 33-501.401(15) to remove the "prominence" or "prevalence" requirement would not save the provision.  Paired with vague definition of "inflammatory," it would be unconstitutionally overbroad as it equips the FDOC with unfettered discretion in impoundment with no limiting provision.

82.     Defendants Dixon and Colon have an ongoing duty to ensure their official actions comport with the law.  Their implementation of F.A.C. § 33-501.401(15) violates this duty.  They are sued in their official capacities for declaratory and injunctive relief.

83.     The implementation of F.A.C. § 33-501.401(15) by Defendants Inch, Colon, Neal, and DOES 1 through 7 have violated HRDC's clearly established constitutional rights.  These defendants are sued in their individual capacities.

84.     In all the above acts, Defendants have acted under color of law and in violation of Plaintiff's clearly established rights.

## COUNT FOUR

**Violation of the Fourteenth Amendment's Due Process Clause—Procedural Due Process**

85.     Paragraphs 1 through 53 are incorporated as if reproduced fully.

86.     As referenced in paragraph 24, at least ten prisoners spanning seven FDOC facilities have not received ordered copies of the *Disciplinary Self-Help Litigation Manual* and neither Plaintiffs nor subscribers have received any notice regarding ostensible impoundments.

87.     As referenced in paragraph 29, on October 2, 2020, staff at Everglades Correctional Institution impounded Volume 32, Number 5, of *Prison Legal News* without notice to Plaintiff.

88.     As referenced in paragraph 30, upon information and belief, Dade Correctional Institution impounded eight issues of *Prison Legal News* with no notice to Plaintiffs. Inmates at Avon Park Correctional Institution, Okaloosa Correctional Institution, Santa Rosa Correctional Institution, Wakulla Correctional Institution, Putnam Correctional Institution, and Union Correctional Institution have reported similar impounds of which Plaintiffs received no notice.

89.     As referenced in paragraphs 22, 23, and 24, since May 2017 there have been twelve instances of Plaintiffs attempting to distribute copies of the *Disciplinary Self-Help Litigation Manual* to prisoners in FDOC. In at least eight of those instances, the books were rejected and, upon information and belief, only two were delivered. No notice nor explanation for the rejection was provided to Plaintiffs, nor did Plaintiff receive an opportunity to be heard.

90.     FDOC exhibits a pattern of failing to provide notice of impoundments to Plaintiff, whose access to inmate-consumers of their publications is limited.

91.     As referenced in paragraph 53, on April 19, 2021, FDOC failed to conduct a "Publisher's Review" of the censorship of April 2020 issue of *Prison Legal News*. In its refusal to

conduct a substantive review of the denial pursuant to Plaintiff's appeal, FDOC cited its own dilatoriness in reviewing the appeal in a timely manner.

92.     The FDOC's censorship of Plaintiff's publications has deprived Plaintiff of constitutionally protected liberty and property interests without due process of law.

93.     The FDOC's failure to provide Plaintiff with constitutionally required notice and an opportunity to be heard and to protest the FDOC's censorship violates the Due Process Clause of the Fourteenth Amendment.

94.     The FDOC's refusal to entertain the appeals of impoundment and failure to deliver, and the Literature Review Committee's affirmation of such, as referenced in paragraphs 20, 23, 52, and 53, violate Plaintiff's liberty and property interests.

95.      Defendants Dixon and Colon have an ongoing duty to ensure their official actions comport with the law.  Their deprivations of HRDC's rights as detailed above violates this duty. They are sued in their official capacities for declaratory and injunctive relief.

96.     The failure to provide due process by Defendants Inch, Colon, Neal, and DOES 1 through 7 have violated HRDC's clearly established constitutional rights.  These defendants are sued in their individual capacities.

97.     In all the above acts, Defendants have acted under color of law and in violation of Plaintiff's clearly established rights.

## COUNT FIVE

### Violation of the Fourteenth Amendment's Due Process Clause—Substantive Due Process

98.     Paragraphs 1 through 53 are incorporated as if reproduced fully.

99.     The FDOC's censorship of Plaintiff's publications has been arbitrary and capricious and bears no rational relationship with any state interest.

100.    The FDOC's conduct violates the Due Process Clauses' substantive component, which protects against arbitrary and irrational government behavior.

101.    Defendants Dixon and Colon have an ongoing duty to ensure their official actions comport with the law.  Their censorship of HRDC's publications violates this duty.  They are sued in their official capacities for declaratory and injunctive relief.

102.    The censorship of HRDC's publications by Defendants Inch, Colon, Neal, and DOES 1 through 7 have violated HRDC's clearly established constitutional rights.   These defendants are sued in their individual capacities.

103.    In all the above acts, Defendants have acted under color of law and in violation of Plaintiff's clearly established rights.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that this Court grant the following relief:

(a)        Declare that Defendants' conduct violates Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

(b)        Declare that F.A.C. § 33-501.401(15), as applied to Plaintiff's publications, violates Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

(c)        Declare that FDOC's proposed amendment to F.A.C. § 33-501.401(15), violates Plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution;

(d)        Enter preliminary and permanent injunctive relief prohibiting the FDOC from refusing to deliver Plaintiff's publications to Florida inmate subscribers, ordering the FDOC to deliver all censored issues of Plaintiff's publications which have previously been withheld from inmate subscribers to their intended recipients, and requiring the FDOC

to provide Plaintiff with individualized notice and an opportunity to be heard and to protest the decision each time Plaintiff's publications are censored by the FDOC;

(d)      Award Plaintiff nominal and compensatory damages against those Defendants sued in their individual capacities, of a sufficient amount to compensate Plaintiff under the pre-amended iteration of F.A.C. § 33-501.401(15), for, among other things, refusal to deliver past issues of Plaintiff's publications to inmate subscribers and refusal to provide Plaintiff with notice and an opportunity to be heard and to protest the FDOC's censorship, as well as the impediment of Plaintiff's ability to disseminate its political message, frustration of Plaintiff's organizational mission, diversion of resources, loss of actual and potential subscribers, damage to Plaintiff's reputation, costs of printing, handling and mailing costs, costs of staff time, and other damages to be proven at trial;

(e)      Award Plaintiff punitive damages for violating Plaintiff's due process rights in violation of the injunction;

(f)      Award Plaintiff its reasonable costs and attorneys' fees arising out of this litigation, pursuant to 42 U.S.C. § 1988; and

(g)      Grant Plaintiff such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

Dated: December 16, 2021                    /s/  *Daniel Marshall*_____

                                            Daniel Marshall, Fla. Bar No. 617210
                                            Jesse Isom, Fla. Bar No. 98588
                                            HUMAN RIGHTS DEFENSE CENTER
                                            P.O. Box 1151
                                            Lake Worth, FL 33460
                                            Tel.: (561) 360-2523
                                            Fax: (561) 828-8166
                                            dmarshall@hrdc-law.org
                                            jwisom@humanrightsdefensecenter.org

                                            Michael H. McGinley*
                                            Dechert LLP
                                            Cira Centre
                                            2929 Arch Street
                                            Philadelphia, PA 19104
                                            Tel.: (215) 994-2000
                                            Fax: (215) 994-2222
                                            Michael.McGinley@dechert.com

                                            Eric D. Hageman*
                                            Dechert LLP
                                            1900 K Street, NW
                                            Washington, DC 20006

                                            Casey Norman*
                                            Dechert LLP
                                            Three Bryant Park
                                            1095 Avenue of the Americas
                                            New York, NY 10036

                                            *(\* motions to appear* pro hac vice
                                            *forthcoming)*

                                            *Attorneys for Plaintiff*

23