**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE No.: 9:21-cv-81391-DMM**

**HUMAN RIGHTS DEFENSE CENTER, a
Washington charitable corporation,**

      **Plaintiff,**

 **v.**

**Ricky D. Dixon, in his official capacity as
Secretary of the Florida Department of
Corrections; Mark S. Inch in his individual
capacity; Jose Colon, in his individual
capacity and in his official capacity as
Warden of Everglades Correctional Institution;
Micha Neal, in her individual capacity; and
DOES 1-7 in their individual capacities.**

      **Defendants.**
_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

COMES NOW Ricky D. Dixon, Secretary of the Florida Department of Corrections, sued in his official capacity, Mark Inch, former Secretary of the Florida Department of Corrections sued in his individual capacity, and Jose Colon, Warden of Everglades Correctional Institution, sued in his official and individual capacities, (hereinafter, "Defendants"), through undersigned counsel, moves to dismiss Plaintiff's First Amended and Supplemental Complaint (Doc. 39).

Plaintiff is an organization that routinely publishes material to prisoners containing advertisements that Plaintiff knows violate prison rules such as the Florida Administrative Code. Plaintiff promotes its prohibited publications nationwide then repeatedly sues state correctional agencies when the publications are inevitably impounded. Plaintiff traditionally engages in

lengthy, costly litigation with multiple attorneys to generate astronomical attorney fees at taxpayer expense.

Plaintiff's present lawsuit raises similar claims already litigated or that could have been litigated in *Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018). Although the Eleventh Circuit Court of Appeals issued a binding opinion directly on point to this case finding that the same prison regulation at issue is reasonable and meets the *Turner* test, and despite binding legal precedent that permits correctional institutions to impound publications based upon a single prohibited feature, Plaintiff continues to raise meritless claims in the Amended Complaint ("Am Comp.") and has now initiated suit against prison employees who merely follow the prison regulation already found to be lawful in binding precedent.

## I.   <u>Plaintiff's complaint is an impermissible shotgun pleading.</u>

Federal Rules of Civil Procedure 8(a)(d) and 10(b) set the minimum requirements for pleadings by requiring "a short and plain statement of the claim showing that the pleader is entitled to relief" and requiring a party to "state its claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of these rules' because they are 'calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked.'" *Vujin v. Galbut*, 836 Fed. App'x 809, 814 (11th Cir. 2020) (unpublished)[1](citations omitted). The Eleventh Circuit has identified four categories of impermissible shotgun pleadings. *Weiland,* 792 F.3d at 1321. First, the most

---

[1] *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) (*per curiam*) (An unpublished opinion is not binding, but it is persuasive authority); *see generally*, Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

common type "is a complaint containing multiple counts where each count adopts the allegations of all proceeding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* Second, complaints that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third, complaints that do not separate "each cause of action or claim for relief" into separate counts *Id.* at 1323. Fourth, complaints that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*  When a district court receives a shotgun pleading, it is required to "strike [the complaint] and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Vibe Micro*, 878 F.3d at 1295.

Plaintiff's Am. Comp. remains a quintessential shotgun pleading, and the Court is required to strike the Am. Comp. Plaintiff's Am. Comp. fails to correct its initial defects by containing multiple counts where each count adopts the initial fifty-three paragraphs, which contain immaterial or vague factual allegations that are not connected to a particular cause of action or a particularized Defendant.

Plaintiff fails to specify what acts defendants allegedly committed to constitute a violation of Plaintiff's constitutional rights.  For instance, Plaintiff alleges that unspecified employees on unspecified dates impounded Plaintiff's publications without alleging any facts to attribute liability to the individual defendants beyond broad generic claims of *respondeat superior*.  Another example is Plaintiff's allegations against unserved defendant Micha Neal, alleging Neal impounded a publication that was sent to the Literature Review Committee to review (Doc. 39 at ¶ 57).  In making the allegation against Neal, Plaintiff incorporated fifty-three

3

paragraphs in the count (*Id*. at 53), then referenced that paragraph twenty-four applied to Neal (Id. at 57), leaving the parties to guess as to which of the remaining initial fifty-three incorporated paragraphs relate to Neal versus other defendants or are paragraphs of immaterial fluff unrelated to a claim or a specific defendant.

Defendants are forced to guess as to the factual basis for many of Plaintiff's claims. Plaintiff sues Defendants in their individual and official capacities without alleging factual support to sustain such claims. For example, Defendant Colon, Warden of Everglades Correctional, is sued in his individual capacity in Count One, which incorporates 53 paragraphs of factual allegations (Doc. 39 at ¶ 54). Defendant Colon is guessing that one of the claims against him are that he allegedly "oversaw the impoundment" of Disciplinary Self-Help Litigation Manual ("DSHLM") (*Id*. at ¶ 56) on March 24, 2020 (*Id*. at ¶ 22). However, in fifty-six (56) paragraphs Plaintiff does not allege any action personally taken on the part of Colon to establish individual liability.

Similar pleading deficiencies are made in relation to other defendants and other publications throughout the Am. Comp. which asserts multiple claims against multiple defendants in the same count without specifying which defendants are responsible for which acts or omissions and lumps together actions allegedly taken at different correctional facilities to impute liability to defendants unrelated to those facilities. For instance, Plaintiff alleged after incorporating fifty-three initial paragraphs that "Defendants Inch and Colon oversaw additional impoundments or failures to deliver numerous volumes of [publications] as referenced in paragraphs 30, 34, and 36." (Doc. 39 at ¶ 60). However, paragraph 30 refers to various FDC facilities such as Dade, Avon Park, Okaloosa, Santa Rosa, Wakulla, Putnam and Union Correctional. Paragraph 34 refers to Hamilton, Marion, Dade, Lowell, Okaloosa and Sumter

Correctional "among others".  Paragraph 36 merely contains a conclusory statement that a vast majority of publications were impounded.  However, none of the referenced paragraphs (30, 34, or 36) contain specific allegations against Warden Colon of Everglades Correctional and only assert general conclusory vague claims of impoundment.  Vague allegations following an incorporation of fifty-three other similarly vague conclusory allegations constitute an impermissible shotgun pleading prohibited by *Weiland*.  Accordingly, Plaintiff's Am. Comp. remains a shotgun pleading and is required to be struck.

      II.     **Plaintiff fails to state a constitutional claim regarding the impoundment of Plaintiff's publications.**

A prison regulation is valid if it passes the four-factor test set out in *Turner v. Safley*, 482 U.S. 78 (1987). The Eleventh Circuit previously held that impoundment of Plaintiff's publications based upon the same or similar advertisements in this case does not violate Plaintiff's constitutional rights under the Turner analysis. *Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018). Recognizing that the FDC could constitutionally impound a publication with even one suspect ad, the Eleventh Circuit found that Plaintiff's publications containing advertisements such as pen pal services[2], people locator services, means to provide unverifiable telephone access, and/or cash-for stamps services were constitutionally impounded and that the FDC administrative rules permitting the impoundment of Plaintiff's publications met the *Turner* test. *Prison Legal News,* at 972.

Binding caselaw provides that the FDC may also constitutionally impound a publication

---

[2] In a separate Eleventh Circuit case, the court upheld a ban on pen pal advertisements. *Perry v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 1359, 1366 (11th Cir. 2011) ("Therefore, the FDC has shown a rational relationship between the legitimate penological interests of protecting the public and ensuring internal prison security and the Rule prohibiting inmates from soliciting for pen pals.").  Every issue of *Prison Legal News* and *Criminal Legal News* has an advertisement for pen pals.

based upon a single ad. *Id. See also, Thornburgh v. Abbott*, 490 U.S. 401, 404-05 & n.5, 418-19, 109 S.Ct. at 1877 & n.5, 1884-85 (1989) (upholding the facial validity of a prison regulation that allowed a warden to reject a publication based on a single prohibited feature). *Jones v. McNeil*, 07-80918-CIV, 2008 WL 2222273, at *12 (S.D. Fla. Apr. 30, 2008) (In a custodial setting, "a prisoner's exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses 'the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment.'") (quoting *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132 (1977)).

Further, FDC administrative rules that prohibit publications containing prohibited advertisement, which have already found by the Eleventh Circuit to meet the *Turner* test, provide for Defendants to impound Plaintiff's publications, even when containing only one prohibited advertisement. For instance, F.A.C. § 33-501.401(15) prohibits publications that:

> (e) The publication encourages, provides instructions on, or facilitates gambling;
> (g) The publication encourages, provides instruction on, or facilitates the commission of a crime;
> (h) The publication depicts, describes, or encourages activities that may lead to the use of physical violence on another person;
> (i) The publication is dangerously inflammatory in that it advocates or encourages riot, insurrection, rebellion, organized prison protest, disruption of the institution, or the violation of federal law, state law, or Department rules;
> (o) The publication contains an advertisement promoting any of the following where the advertisement is the focus of, rather than being incidental to, the publication, or the advertising is prominent or prevalent throughout the publication:
> > 1. Three-way calling services;
> > 2. Pen pal services;
> > 3. The purchase of products or services with postage stamps; or
> > 4. Conducting a business or profession while incarcerated.
> (p) The publication otherwise presents a threat to the security, order, or rehabilitative objectives of the correctional system or the safety of any person.

Plaintiff does not allege that the impounded publications did not contain advertisements

such as pen pal services, stamps-for-cash/goods schemes, website/social media setup services, research assistance/people finder services, *etc*. Rather, Plaintiff alleges that the advertisements were not prominent or prevalent throughout the publication, addressing only one administrative rule and disregarding other qualifying rules such as the disruption of the institution, safety of an individual or the facilitation of commission of a crime.

However, even if Plaintiff were to establish that the relevant advertisements were not prominent or prevalent throughout the publication, Plaintiff still fails to state a cause of action for a constitutional violation, to the extent Plaintiff seems to imply that the mere alleged violation of its own rules is a constitutional violation. It is well established that violation of a prison rule or regulation does not rise to the level of a constitutional violation. Prison regulations do not acquire federal constitutional dimension, do not confer rights or benefits and are merely designed to guide prison officials in the administration of prisons. *Sandin v. Conner*, 515 U.S. 472, 481-482 (1995).[3]  As such, any claim relating to Defendants failing to follow prison regulations in the screening of publications is not, by itself, a constitutional violation. Controlling caselaw provides that Plaintiff's publications may be impounded on a single advertisement without implicating a violation of Plaintiff's First Amendment rights. *Prison Legal News*, 890 F.3d at 972 (noting that

---

[3] *See also United States v. Caceres*, 440 U.S. 741, 751-52 (1979) (explaining that mere violations of agency regulations do not raise constitutional questions); *Magluta v. Samples*, 375 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not constitutional mandates."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (explaining that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations...."); *Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987) (finding the adoption of mere procedural guidelines does not give rise to a liberty interest and failing to follow regulations does not, in and of itself, violate due process); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (finding that "failure to follow prison rules or regulations do not, without more, give rise to a constitutional violation"); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1527-28 (11th Cir. 1987) (finding that violation of state statute defining due process does not establish violation of a federal constitutional right actionable under 42 U.S.C. § 1983).

the FDC could reject a publication with one suspect advertisement) (citing *Thornburgh*, 490 U.S. at 404-05 & n.5, 418-19). Accordingly, Plaintiff's first amendment claims should be dismissed.

III.    **Plaintiff fails to state a claim against Defendants Colon and Inch in their individual capacities**.

Plaintiff fails to identify a single action or inaction taken by Warden Colon or former Secretary Inch in the Am. Comp., instead focusing on actions and inactions by Department staff members in allegedly improperly impounding publications and/or failing to provide individual notices of the impoundments. Nowhere does Plaintiff allege that Colon or Inch were personally involved in those actions. Instead, Plaintiff alleges that the Defendants "oversaw" various actions by unspecified employees (Doc. 39 at 1-67).

Plaintiff is possibly attempting to state individual capacity claims against Colon and Inch based on the doctrines of *respondeat superior* or vicarious liability; however, such claims are unavailable. *See Harvey v. Harvey*, 949 F. 2d 1127, 1129 (11th Cir. 1992) (citing *Monell v. Dep't of Soc. Srvcs.*, 436 U.S. 658 (1978)). *See also Collins v. City of Harker Heights*, 503 U.S. 115 (1992); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). An individual cannot be held liable for the omissions or actions of others, and a supervisor can only "be held liable for the actions of his subordinates under § 1983 if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit." *Am. Fed'n of Labor v. City of Miami*, 637 F. 3d 1178, 1190 (11th Cir. 2011). Nowhere in the complaint does Plaintiff allege any facts to support allegations for individual capacity claims, nor can Plaintiff as neither defendant was personally involved in the impoundment of Plaintiff's publications.

The allegations against Colon and Inch are that they both oversaw impoundments or oversaw the lack of delivery of various publications. Such threadbare allegations do not meet the

8

"extremely rigorous" standard for supervisory liability. *See Hall v. Smith*, 170 Fed. App'x 105, 108 (11th Cir. 2006) (stating that "[b]ecause Hall alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees, the district court did not err in dismissing Hall's claims against the City"). Accordingly, such is insufficient to state a claim against Colon or Inch to support individual capacity claims. Colon and Inch cannot be held individually responsible for the alleged failure to follow Department rules by individual officers, where they have no personal involvement in impoundments and Plaintiff has not alleged facts regarding a custom or practice regarding the violation of Plaintiff's constitutional rights by adherence of a prison regulation already found to meet the *Turner* test by the Eleventh Circuit.  Further, Plaintiff attempts to sue each defendant in their individual capacities for the implementation of F.A.C. 33-501.401(15) based upon Plaintiff's vague constitutional challenges (Doc. 39 at ¶ 76, 83).  None of the Defendants are responsible in their individual capacities for the promulgation of prison rules and F.A.C. 33-501.401(15) was already found to meet the *Turner* test in *Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018).  Accordingly, all individual capacity claims against Defendants should be dismissed.

### IV.    Plaintiff fails to state a claim that F.A.C. § 33-501.401(15) is void for vagueness or overbroad.

In count two, Plaintiff alleges in ironically vague terms that F.A.C. § 33-501.401(15) is "so vague that persons of common intelligence must necessarily guess at their meanings" (Doc. 1 at 13). Plaintiff presents its void for vagueness claims even though Plaintiff previously brought forth a lawsuit under the same regulation which Plaintiff fully litigated on the merits, pursued appellate relief and where Plaintiff had no difficulty interpreting or asserting its belief that F.A.C. § 33-501.401(15) violated its constitutional rights as written. *See, Prison Legal News v.*

*Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018); *Prison Legal News v. Jones*, 4:12CV239-MW/CAS, 2015 WL 12911752 (N.D. Fla. Oct. 5, 2015), *aff'd sub nom. Prison Legal News v. Sec., Fla. Dep't of Corr.*, 890 F.3d 954 (11th Cir. 2018).

Persuasive caselaw in our circuit supports that Plaintiff's facial vagueness challenge should be assessed under a less restrictive standard than that used for criminal statutes. Although Plaintiff is not an incarcerated prisoner, Plaintiff sends its publications for economic gain to incarcerated prisoners that are subject to the rules and regulations of the correctional institution. In *Sweet v. McNeil*, 4:08CV17-RH/WCS, 2009 WL 903291, at *4 (N.D. Fla. Mar. 31, 2009), the Northern District provided a detailed analysis regarding the split in caselaw on whether a vagueness challenge to a prison regulation is analyzed under a more relaxed standard than a criminal law standard and ultimately sided with the more relaxed standard. Similar analysis has been made in other cases that evaluated prison regulations under a deferential standard and reasonableness test. *See, e.g.*, *Baer v. McNeil*, 5:09CV222/SPM/EMT, 2010 WL 1816847, at *2 (N.D. Fla. May 6, 2010) (prison regulation constitutional as written and applied analyzed under a deferential standard and reasonableness under Turner); *Robles v. English*, 5:13CV6/MCR/EMT, 2013 WL 3797594, at *10 (N.D. Fla. July 19, 2013) (court found that a constitutional facial challenge to prison regulations only requires the rule to have a "plainly legitimate sweep" and that "the better-reasoned position is that some deference is due prison administrators in determining whether a prison disciplinary rule is void for vagueness. That is, after all, the standard required when a prison regulation impinges upon a First Amendment interest."); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (stating law affecting only economic interest is subject to less rigorous scrutiny by courts and is only void for vagueness if it is vague in all applications); *Jones v. McNeil*, 07-80918-CIV, 2008 WL

10

2222273, at *10 (S.D. Fla. Apr. 30, 2008) (analyzing constitutional challenge to prison regulations and stating that "due process requires less exactitude in statutes that lack criminal sanctions). To find a civil statute void for vagueness, the statute must be "so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS,* 387 U.S. 118, 123 (1967). "[A] non-criminal statute is not unconstitutionally vague 'if persons of reasonable intelligence can derive a core meaning from the statute." *Cotton States Mutual Ins. Co. v. Anderson,* 749 F .2d 663, 669 n. 9 (11th Cir. 1984).

Prison regulations are only actionable when the regulation is unreasonable. *Hakim v. Hicks,* 223 F.3d 1244, 1247 (11th Cir. 2000). The standard for determining the reasonableness of a regulation is the *Turner* standard. *Smith v. Fla. Dep't of Corr.*, 318 Fed. App'x 726, 729 (11th Cir. 2008) (unpublished but persuasive authority). In the context of prison regulations, "The *Turner* analysis applies equally to facial and "as applied" [constitutional] challenges." *Bahrampour v. Lampert*, 356 F.3d 969, 975 (9th Cir. 2004) (citing *Morrison v. Hall,* 261 F.3d at 905, 907). *See also Wood v. Vartiainen*, 2:02CV626FTM-29DNF, 2005 WL 2291723, at *5 (M.D. Fla. Sept. 20, 2005) (applying *Turner* reasonableness test for evaluating prison regulation under First Amendment); *In re Soliman*, 134 F. Supp. 2d 1238, 1252 (N.D. Ala. 2001) (stating prison regulations are scrutinized under a deferential standard pursuant to the *Turner* test). As stated in more detail above, F.A.C. § 33-501.401(15) was found to be reasonable and met the *Turner* standard in *Prison Legal News,* 890 F.3d 954. Therefore, the regulation meets constitutional standards and is not vague or overbroad.[4]

---

[4]     Further, even if F.A.C. § 33-501.401(15) were to be evaluated under a stricter standard, the regulation is not unconstitutionally vague.
      The purpose of the vagueness doctrine is to ensure fair notice to a person "to enable the ordinary citizen to conform his or her conduct to the law." *See City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). However, the doctrine for penal statutes only requires reasonably clear

In this case, the plain meaning of the terms at issue are ordinary words subject to common meaning and the Plaintiff had fair notice that its advertisements at issue were prohibited under the prison regulations because the Eleventh Circuit told Plaintiff so in *Prison Legal News*, 890 F.3d 954. Plaintiff is precluded by its own prior lawsuit from coming forward now to claim that it was unaware based upon the wording of the regulation that advertisements for pen-pal services, stamps for cash, phone call services, people locater services and the like were prohibited by prison rules that met the *Turner* test. *See also, Jones v. Caruso*, 569 F.3d 258, 276 (6th Cir. 2009) (citing *United States v. Hill*, 167 F.3d 1055, 1064 (6th Cir. 1999) for the proposition that a "defendant had no standing to argue that gambling statutes were void for vagueness where he had fair notice that his conduct was prohibited by those statutes"); *Cole Vision Corp. v. Dep't of Business and Prof. Reg.*, 688 So. 2d 404, 410 (Fla. 1st DCA 1997) (finding that "it is not possible . . . to adopt rules in such excruciating detail that every potential circumstances arising . . . will be expressly addressed.").

In count three, Plaintiff alleges in conclusory terms that application of F.A.C. § 33-501.401(15) is unconstitutionally overbroad and does not protect a legitimate state interest. As stated above, binding caselaw from the Eleventh Circuit has already found that F.A.C. § 33-501.401(15) is constitutional, meets the *Turner* test, and promotes a legitimate state interest. *Prison Legal News*, 890 F.3d 954. Plaintiff also made similar constitutional challenges to another prison rule regarding inmate mail in *Prison Legal News v. Jones*, 126 F. Supp. 3d 1233, 1257 (N.D. Fla. 2015), *opinion amended and superseded,* 4:12CV239-MW/CAS, 2015 WL 12911752 (N.D. Fla. Oct. 5, 2015), *aff'd sub nom. Prison Leg. News v. Sec., Fla. Dep't of Corr.*, 890 F.3d

---

guidelines and does not require that "every law be so crystal clear as to preclude every single vagary or difference of opinion regarding enforcement under any scenario." *Jones v. McNeil*, 07-80918-CIV, 2008 WL 2222273, at *10 (S.D. Fla. Apr. 30, 2008).

954 (11th Cir. 2018).  In that case the Northern District Court noted that "[p]rison regulations are not often challenged on vagueness grounds" and that "some courts have held that this [vagueness] doctrine and its frequent companion, the First Amendment overbreadth doctrine, do not apply with independent force in the prison-litigation context." *Jones*, 126 F.Supp. 3d at 1257 (citing *Miller v. Wilkinson,* No. 2:98–CV–275, 2010 WL 3909119, at *5 (S.D. Ohio Sept. 30, 2010) (internal citations omitted)).

Plaintiff again does not provide specific facts in count three to support its assertions but rather relies on an incorporation of all asserted facts that requires Defendant to guess as to the buried facts that are relevant to count three.  Defendants and the Court are not required to sift through Plaintiff's allegations to attempt to see what buried facts are relevant to this claim. *Ferrell v. Durbin*, 311 Fed. App'x 253, 259 (11th Cir. 2009); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). However, Defendant can only guess that Plaintiff's claims are based upon F.A.C. § 33-501.401(15)(i) with the terms "inflammatory" or "dangerously" and "disrupt[s] . . . the institution".

The Eleventh Circuit has already determined that the FDC can ban publications that violate F.A.C. § 33-501.401(15), which meets the *Turner* test. *Prison Legal News,* 890 F.3d 954. The wording in F.A.C. § 33-501.401(15)(i) are words of a common nature, are not ambiguous and do not give unbridled discretion to prison officials. In a similar case, the Fifth Circuit in *Vodicka v. Phelps*, 624 F.2d 569, 570 (5th Cir. 1980), a binding opinion[5], found that a prison regulation banning a publication based upon the prison's determination that the publication was

---

[5] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*) (Fifth Circuit decisions dated on or before Sept. 30, 1981, are binding precedent in the Eleventh Circuit).

"an immediate threat to the security of the institution" was not vague or overbroad and was constitutional as applied.

In this case, Plaintiff provides no factual assertions in its shotgun pleading to indicate what sections of F.A.C. § 33-501.401(15) that Plaintiff believes are overbroad and provides no facts as to how the regulation is unconstitutional as applied to Plaintiff. The regulation meets the *Turner* test and Plaintiff does not allege that any of its impounded publications were devoid of the improper advertisement that Plaintiff was expressly told by the Eleventh Circuit could be prohibited.  Thus, Plaintiff does not state a constitutional claim against F.A.C. § 33-501.401(15).

Notwithstanding that F.A.C. § 33-501.401(15) is not unconstitutionally vague or overbroad, Plaintiff is also precluded from making such claims now as Plaintiff should have properly raised these issues in its prior case.  Plaintiff attempted to raise its vagueness argument in its prior case, but the trial court denied Plaintiff's motion to amend its complaint and Plaintiff did not preserve the issue on appeal. *Prison Legal News,* 890 F.3d at 963 (Plaintiff's "assertion that the "prominent or prevalent" language is too vague is not properly before us because the district court denied Plaintiff's motion to amend its complaint to include a void-for-vagueness claim, and Plaintiff did not appeal that ruling.").

Additionally, Plaintiff did not raise its overbreadth argument in its prior case although Plaintiff could have done so. Even though Plaintiff did not properly raise its constitutional issues in its original case, Plaintiff is precluded from doing so now as this case involves the same nucleus of operative facts as the original case.  The United States Supreme Court explained claim preclusion in that:

> [C]laim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment "prevents litigation of all grounds for, or defenses to,

> recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); see also Wright & Miller § 4407. Suits involve the same claim (or "cause of action") when they "'aris[e] from the same transaction,'" *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, n. 22, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)), or involve a "common nucleus of operative facts," Restatement (Second) of Judgments § 24, Comment *b*, p. 199 (1982) (Restatement (Second)).

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp, Inc.*, 140 S. Ct. 1589, 1594-95 (2020).

Here, Plaintiff brings the same lawsuit against the FDC involving the impoundment of Plaintiff's publications for improper advertisement that is prohibited under F.A.C. § 33-501.401(15). The causes of action between both cases are the same and share a common nucleus of fact. Therefore, Plaintiff should be precluded from raising its vagueness and overbreadth challenges to F.A.C. § 33-501.401(15) since Plaintiff should have properly raised those arguments in its initial action. As to Plaintiff's possible allegation that additional publications besides *Prison Legal News* were impounded, Plaintiff's claims are precluded by the binding caselaw rendered in *Prison Legal News,* 890 F.3d 954, which held that the F.A.C. § 33-501.401(15) met the *Turner* test.

Further, Plaintiff seeks to sue Defendants in their individual capacities for "implementation of F.A.C. § 33-501.401(15)" by arguing that the regulation is unconstitutionally vague or overbroad (Doc. 39 at 16, 18).  However, Plaintiff alleges no facts to substantiate that any Defendant in their individual capacity "implemented[6]" F.A.C. § 33-501.401(15).  However, even if Defendants had promulgated the administrative rule, Defendants submit they would be protected by immunity for performing this legislative-type function.  See e.g., *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1012 (11th Cir. 1992)(Government officials performing

---

6 https://www.merriam-webster.com/dictionary/implementation defines implementation as "an act or instance of implementing something: the process of making something active or effective."

legislative type functions are generally afforded absolute legislative immunity from suit, not just damages).  Accordingly, Plaintiff's claims should be dismissed.

## V.   Plaintiff fails to state a claim for violations of due process.

As an initial matter, Defendants note that any claims prior to August 10, 2017 are time-barred under the four-year statute of limitations pursuant to 95.11, Florida Statutes. Further, any claims occurring prior to the previous action by Prison Legal News referenced above are *res judicata*.

Plaintiff's due process claims, in general, allege that Plaintiff received notice of impoundments from subscribers, not the FDC regarding some of its publications.  Regardless of Plaintiff's allegations, Plaintiff nonetheless received notice and cannot demonstrate any prejudice as a result. It is the responsibility of the person claiming a denial of due process to demonstrate actual prejudice as a result of the alleged due process violation.  See e.g. *Smith v. Warden, Macon State Prison*, 803 Fed. Appx. 272 (11th Cir. 2020); *Stoner v Graddick*, 751 F.2d 1535 (11th Cir. 1985).

Further, Rule 33-501.401(22) and (23) provide post deprivation remedies for Plaintiff. As stated by the Eleventh Circuit:

> Once a state has established procedures for the effectuation of an attachment—which Alabama undisputedly has—it cannot predict whether or not, in a given situation, those procedures will be followed or ignored. Thus, as with an employee's negligence or an employee's intentional wrongful act, Appellants' actions in this case were not preventable beforehand by the state. Therefore, under *Parratt* and *Hudson,* no procedural due process violation occurs unless the state fails to provide the opportunity to redress the situation after the fact. The Tinneys argue *only* that the due process violation was complete at the time of the attachment, without regard to the availability of post-attachment remedies, and thus they have failed to establish a procedural due process violation. Because the Tinneys have not challenged the adequacy of Alabama's post-deprivation remedies, we have no occasion to decide whether Alabama law does in fact provide adequate avenues for making the Tinneys whole.

16

*Tinney v. Shores*, 77 F.3d 378, 382 n.1 (11th Cir. 1996). Because Plaintiff has post deprivation remedies available, the due process count fails to state a claim.

To the extent that Plaintiff presents a substantive due process claim that the Department's impoundment of publications is unconstitutional, Plaintiff fails to state a claim as this question has already been addressed by the Eleventh Circuit:

> The record shows that the Department's decision to limit inmates' exposure to the ads is not "so remote" from the Department's security and safety interests "as to render the… [impoundments] arbitrary or irrational." *Pope [v. Hightower]*, 101 F.3d at 1385. It's not remote at all. There is a rational connection between its impoundments of *Prison Legal News* based on the magazine's ad content and prison security and public safety interests.

*Prison Legal News*, 890 F.3d 954, 972 (11th Cir. 2018). Accordingly, Plaintiff fails to state a claim as to the substantive due process issue and the claim is frivolous.

## VI.    The Northern District is the proper forum for the violation of injunction claims.

As addressed by Plaintiff in the Am. Comp., a previous case by Plaintiff resulted in the Northern District Court issuing an injunction against the FDC that required the FDC to provide notice for each impounded publication. *See Prison Legal News*, 890 F.3d 954. Warden Colon was not a party to the injunction in the Northern District, Mark Inch in his individual capacity was not a party to the injunction, and the Southern District Court did not issue the injunction.

Plaintiff's allegations as to subsequent notice issues is actually an allegation that Defendants have "ignored that injunction" by rejecting publications without notice (Doc. 39 at 14). Plaintiff's claims are allegations that the previous injunction has been violated rather than new claims, which is supported by Plaintiff's request for relief: "punitive damages for violating Plaintiff's due process rights in violation of the injunction." (Doc. 39 at 22).

Claims regarding a violation of a previous injunction are more properly raised in the

original case wherein the injunction was issued, before the same Court. The Eleventh Circuit has held that "injunctions are enforced through the district court's civil contempt power" and "[i]f a party contends that another party is violating an injunction, the aggrieved party should move the court for an order to show cause why the other party should not be held in civil contempt." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (internal citations omitted). *See also Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). Accordingly, these claims are more appropriately brought before the original Court which has jurisdiction to enforce its injunction, rather than in a new proceeding before this Court which would require the litigation of a question already previously resolved in the prior action. Additionally, any violation of injunction claims should only be brought against the FDC in the Northern District and any violation of injunction claims against individual defendants should be dismissed.

### VII.   Eleventh Amendment Immunity

Defendants are entitled to immunity for the official capacity claims under the Eleventh Amendment. A suit against a state employee in an official capacity is a suit against the State for Eleventh Amendment purposes. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). In the absence of any waiver or express congressional authorization, which is not present in this case, the Eleventh Amendment prohibits a suit against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). It is well settled that 42 U.S.C. §1983 does not create a cause of action for money damages against the States, a State agency, or State officials in their official capacities.   *McKinley v. Kaplan,* 177 F.3d 1253, 1256 (11th Cir.  1999). Dismissal is appropriate if the plaintiff seeks monetary relief from defendant's immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(iii). Accordingly, Defendants are immune from suit in

18

their official capacity as it relates to damages, and all official capacity claims for damages must be dismissed.

**VIII.** <u>**Qualified Immunity**</u>

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law." (*Id.*). "District Courts are obliged to analyze carefully whether 'preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances.'" *Wade v. U.S.*, 20-11962, 2021 WL 4234168, at \*9 (11th Cir. Sept. 17, 2021) (quoting, *Evans*, 407 F.3d 1272, 1282 (11th Cir. 2005)).

In resolving questions of qualified immunity, courts engage in a two-pronged inquiry. See, *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right. . . . The second . . . asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 659. (citations, internal quotation marks, and alterations omitted)(first ellipsis in original). The court has discretion to decide which question to address first, *see*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but to survive a qualified immunity defense, the plaintiff must satisfy both showings. See, *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This imposes an objective standard, and that objective standard is "measured by reference to clearly established law." *Harlow*, 457 U.S. at 818. Because this objective standard is fundamental to the qualified immunity defense, the district court should determine if the law was clearly established at the time the incident occurred. As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow*, 457 U.S. at 818–19. If the law is not clearly established, then the court should dismiss the case against the government official. If the law was clearly established, then the claim against the government official should go forward.

Recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law "in light of the specific context of the case, not as a broad general proposition. . .. ." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court does not require a case directly on point, but "existing precedent must have placed the . . . constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741. In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation. *See Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015). (citation omitted). To be clearly established, the precedent must give officials clear warning of unconstitutional conduct. *Id.*

In one of its fairly recent opinions, the Supreme Court observed:

> In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases. The Court has found this necessary both because qualified immunity is important to society as a whole, and because as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted to go to trial.
>
> Today, it is again necessary to reiterate the longstanding principle that "clearly established law" should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*White v. Pauly*, 137 S. Ct. 548, 551–52 (2017) (multiple citations, some quotation marks, and alterations omitted).   The Supreme Court repeated its directive most recently in *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021), reaffirming that "We have repeatedly told courts not to define clearly established law at too high a level of generality. It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (internal citations and quotations omitted).

And finally, because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. "So [the court] must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

A government employee performs a discretionary function when the task is a (1) legitimate job-related function and (2) through means that were withing the employee's power to utilize. *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). Although Plaintiff's shotgun pleading provides no facts of any action by Defendants to impute individual liability, to the extent that Plaintiff intends to allege some sort of supervisor liability, the objective circumstances of a supervisor enforcing prison regulations would compel the conclusion that supervisory functions in performance of official duties is withing the scope of a discretionary function. *See, e.g.*, *Est. of Cummings,* (Court found supervisory functions or enforcement of regulations is a discretionary duty taken within the scope of employment and in the performance of official duties). Once a prison official shows that he acted within the scope of his discretionary authority, the burden shifts to the plaintiff to establish a violation of a constitutional right and whether the right was clearly established at the time of the alleged conduct. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In this case, controlling caselaw in *Prison Legal News,* 890 F.3d 954, shields all Defendants against Plaintiff's constitutional claims. Plaintiff has alleged no facts, nor can they, that would pierce the protective covering of qualified immunity. The Department of Corrections followed controlling law by impounding publications that contain advertisements or prohibited materials in a prison setting.

Plaintiff does not allege any actions committed by Defendants to impute individual liability or any actions by Defendants which is contrary to existing law. As stated above, Plaintiff's generic claims of *respondeat superior* or for "implementation: of a prison rule do not establish liability for Defendants and does not pierce immunity protections. The specific examples of publication impoundments cited by Plaintiff contained prohibited advertisements or

prohibited material with either proper notice or constructive notice to Plaintiff of the impoundment and do not state a claim against Defendants.  In fact, Plaintiff does not allege any wrongdoing by Defendants regarding impoundment of publications containing only proper advertisements. "The touchstone of qualified immunity is notice or fair warning . . . [that] "a reasonable official would understand that his conduct violates" a constitutional right.  *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015).  Plaintiff alleges no factual circumstances, nor can Plaintiff allege in future amendment, any circumstance that would pierce qualified immunity for Defendants.

### IX.    Plaintiff is not entitled to punitive damages

Punitive damages are to "punish the defendant for willful or malicious conduct and to deter others from similar behavior," not to compensate a plaintiff for injuries suffered. *Hoever v. Marks*, 993 F.3d 1353, 1358-59 (11th Cir. 2021) (internal citations omitted). Rather, punitive damages are based upon the character or egregious misconduct of the tortfeasor. *Id*. at 1359.  In this case Plaintiff seeks punitive damages for violation of the injunction issued by the Northern District, which only the Secretary of the FDC in an official capacity was a party in that action (Doc. 39 at 22).  Plaintiff provides no factual allegations as to the culpability of any served or unserved Defendant that would support a punitive damage claim.[7] To the extent that Plaintiff seeks enforcement for alleged violation of the injunction, as stated above, Plaintiff is pursuing its claim in the incorrect forum and only the Secretary of the FDC in an official capacity was a party to the injunction. Accordingly, Plaintiff's claim for punitive damages should be struck.

### X.    Defendant Colon is a redundant defendant to Plaintiff's injunction claims.

---

[7] Plaintiff does not explain what part of the injunction was violated or when.  This is peculiar considering the Plaintiff was provided notice via email for many issues of *Prison Legal News* and has requested a review, per Rule 33-501.401(25)(b), F.A.C., of all issues of *Prison Legal News* and *Criminal Legal News* going back to August of 2017.  FDC is complying with this request.

Plaintiff's claims for injunctive relief against Warden Colon should be dismissed because Colon is a redundant defendant to Secretary Dixon. Colon, neither in his individual or official capacity as a warden, has the authority to enact or change policy that would be applicable to the prison. Such authority rests with Secretary Dixon or the FDC as a whole. *See generally.* Fla. Stat. § 944.09 (2017) and Fla. Stat. § 20.05(1)(e) (West).  Nothing is gained by keeping Warden Colon as a defendant in this case, as the Department can provide the injunctive relief Plaintiff seeks and additional official capacity parties are not needed. *See*, *Higdon v. Fulton County, Georgia*, 746 Fed. Appx. 796, 799 (11th Cir. 2018)(unpublished)(Affirming dismissal of unnecessary redundant employee defendant when employer was also a defendant); *Lewis v. Clarke*, 137 S. Ct. 1285, 1290-91 (2017) ("[L]awsuits brought against employees in their official capacity represent only another way of pleading an action against an entity of which an officer is an agent.") (quotation marks omitted).

"[C]ourts in [the Eleventh] Circuit routinely and overwhelmingly deem suits against both a local government official in his official capacity and the entity of which the officer is an agent to be redundant and dismiss the official-capacity claims against the individual defendant on that basis." *M.R. v. Bd. of Sch. Comm'rs of Mobile Cty.*, Civil Action No. 11-0245-WS-C, 2012 WL 2931263, at *2 (S.D. Ala. July 18, 2012).  By suing only FDC for injunctive relief, the case becomes streamlined as otherwise, the case would constantly need to be amended otherwise to include new individuals who step into the position of warden.  Further, Plaintiff would not be prevented from being able to pursue the relief requested by him and would be able to be provided with his requested relief if he were successful by suing only Secretary Dixon in his official capacity. Therefore, Plaintiff's injunctive claims against Warden Colon should be dismissed.

XI.    **Plaintiff's challenge to proposed rule change to 33-501.401(15)(0) is not ripe.**

To the extent that Plaintiff raises proposed claims challenging the language of the Department's changes to Rule 33-501.401, those changes are still in the development stage of the administrative process and not yet final, where they still must go through the extensive process and may or may not be finalized in the current developmental form. Any challenge to that proposed version of the rule at this juncture is unripe, rendering the proposed amendment, to the extent it includes a challenge to the language of or constitutionality of that new proposed rule, premature. *See American Petroleun Institution v. E.P.A.*, 683 F.3d 382 (D.C. Cir. 2012); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008) (district court did not abuse its discretion in not granting leave to amend when amendment was futile because claims were either premature or barred by res judicata).

WHEREFORE, based upon the forgoing facts and arguments, Defendants request that the Court dismiss Plaintiff's Amended Complaint.


## CERTIFICATE OF CONFERRAL

**I hereby certify** that, in accordance with Southern District of Florida local rule 7.1(a)(3), Plaintiff's counsel was conferred with and states that Plaintiff opposes Defendants' Motion to Dismiss.

/s/ Lori Huskisson
LORI HUSKISSON

Respectfully submitted,

| | |
|---|---|
| **ASHLEY MOODY** | **ASHLEY MOODY** |
| **ATTORNEY GENERAL** | **ATTORNEY GENERAL** |
| | |
| /s/ Lori Huskisson | /s/ Kristen J. Lonergan |
| **Lori Huskisson** | **Kristen Lonergan** |
| Senior Assistant Attorney General | Assistant Attorney General |
| Florida Bar No.:  0845531 | Florida Bar No.: 125556 |
| Office of the Attorney General | Office of the Attorney General |
| The Capitol, PL-01 | The Capitol, PL-01 |
| Tallahassee, Florida 32399-1050 | Tallahassee, Florida 32399-1050 |
| Telephone: (850) 414-3300 | Telephone: (850) 414-3300 |
| Facsimile: (850) 488-4872 | Facsimile: (850) 488-4872 |
| Lori.Huskisson@myfloridalegal.com | Kristen.Lonergan@myfloridalegal.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically and furnished electronically on all counsel of record via CM/ECF on December 31, 2021.

/s/ Lori Huskisson
Lori Huskisson, Esq.

26